BRYAN SCHWARTZ LAW
Bryan J. Schwartz (SBN 209903)
Rachel M. Terp (SBN 290666)
Maren I. Christensen (SBN 320013)
180 Grand Avenue, Suite 1380
Oakland, CA 94612
Telephone: (510) 444-9300
Facsimile: (510) 444-9301
Email: bryan@bryanschwartzlaw.com
       rachel@bryanschwarzlaw.com
       maren@bryanschwartzlaw.com

NICHOLS KASTER
Matthew C. Helland (SBN 250451)
Daniel S. Brome (SBN 278915)
235 Montgomery Street, Suite 810
San Francisco, CA 94104
Telephone: (415) 277-7234
Facsimile: (415) 277-7238
Email: helland@nka.com
       dbrome@nka.com

*Attorneys for Plaintiffs, the Collective, and Putative Class Action Members*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HARRIETT MITCHELL, JASON SUMMERS, and JOSEPH ADAMS, individually, on behalf of others similarly situated, and on behalf of the general public,<br><br>               Plaintiffs,<br>vs.<br>CORELOGIC VALUATION SOLUTIONS, INC., and DOES 1-10, inclusive<br>               Defendant(s). | Case No. 8:17-cv-02274-DOC-DFMx<br><br>**PLAINTIFFS' NOTICE OF MOTION FOR ORDER TO SHOW CAUSE WHY DEFENDANT SHOULD NOT BE HELD IN CONTEMPT OF COURT FOR VIOLATING THE STIPULATED INJUNCTION, AND IN THE ALTERNATIVE APPLICATION FOR FURTHER TEMPORARY RESTRAINING ORDER.** |

Plaintiffs move this Court for an order to show cause why Defendant CoreLogic should not be held in contempt of Court for violating multiple provisions of the temporary restraining order [ECF No. 146] and stipulated injunction [ECF 158]. Plaintiffs' counsel met and conferred with Defendant's counsel, who oppose this motion. *See* Declaration of Maren Christensen Ex. A.

For the reasons set forth more fully in Plaintiffs' Memorandum in Support of Their Motion For Order to Show Cause Why Defendant Should Not Be Held In Contempt of Court For Violating Multiple Provisions Of The Temporary Restraining Order and Stipulated Injunction, the Court should: (1) invalidate any agreements to opt-out of this lawsuit, (2) order corrective notice, (3) sanction CoreLogic for fees and costs associated with the instant *ex parte* motion and application, (4) require witness testimony at the show cause hearing regarding the nature and scope of CoreLogic's improper contacts, and, should the Court find that CoreLogic's improper contacts are not all subject to the stipulated injunction, (5) enter a temporary restraining order prohibiting CoreLogic from communicating with putative class members about this lawsuit.

DATED: July 8, 2019

**BRYAN SCHWARTZ LAW**

By: /s/ *Maren I. Christensen*
Maren I. Christensen (SBN 320013)

*Attorneys for Plaintiff and Putative Class and Collective Action Members*

1  BRYAN SCHWARTZ LAW
2  Bryan J. Schwartz (SBN 209903)
   Rachel M. Terp (SBN 290666)
3  Maren I. Christensen (SBN 320013)
4  180 Grand Avenue, Suite 1380
   Oakland, CA 94612
5  Telephone: (510) 444-9300
6  Facsimile: (510) 444-9301
   Email: bryan@bryanschwartzlaw.com
7         rachel@bryanschwarzlaw.com
           maren@bryanschwartzlaw.com
8
9  Counsel continued on following page.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HARRIETT MITCHELL, JASON SUMMERS, and JOSEPH ADAMS, individually, on behalf of others similarly situated, and on behalf of the general public,<br><br>Plaintiffs,<br><br>vs.<br><br>CORELOGIC VALUATION SOLUTIONS, INC., and DOES 1-10, inclusive<br><br>Defendant(s). | Case No. 8:17-cv-02274-DOC-DFMx<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION FOR ORDER TO SHOW CAUSE WHY DEFENDANT SHOULD NOT BE HELD IN CONTEMPT OF COURT FOR VIOLATING THE STIPULATED INJUNCTION, AND IN THE ALTERNATIVE APPLICATION FOR FURTHER TEMPORARY RESTRAINING ORDER.** |

NICHOLS KASTER
Matthew C. Helland (SBN 250451)
Daniel S. Brome (SBN 278915)
235 Montgomery Street, Suite 810
San Francisco, CA 94104
Telephone: (415) 277-7234
Facsimile: (415) 277-7238
Email: helland@nka.com
       dbrome@nka.com

*Attorneys for Plaintiffs, the Collective, and Putative Class Action Members*

**TABLE OF CONTENTS**

I. INTRODUCTION ..................................................................................1

II. BACKGROUND ....................................................................................2

III. ARGUMENT ..........................................................................................4

    A. CoreLogic's Communication With Terminated Opt-Ins About This Lawsuit Violates the Stipulated Injunction. .............................4

    B. CoreLogic's Offer of Settlement to Terminated California Putative Class Members Violates the Stipulated Injunction. ................5

    C. In the Alternative, CoreLogic's Offer of Settlement to Terminated California Putative Class Members Is Prohibitively Misleading and Coercive Under Rule 23. ....................................................................6

IV. REMEDY ................................................................................................9

    A. The Court Has Authority to Find CoreLogic In Contempt of Court. .....9

    B. Corrective Action and Corrective Notice Is Warranted. ........................10

    C. Sanctions Are Warranted. ........................................................................11

V. CONCLUSION ........................................................................................11

# TABLE OF AUTHORITIES

**Federal Cases**

*Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) ................ 11

*Belt v. Emcare, Inc.*, 299 F.Supp.2d 664 (E.D. Tex. 2003) ......................................... 7

*Camp v. Alexander*, 300 F.R.D. 617 (N.D. Cal. 2014) ............................................ 5, 8

*County of Santa Clara v. Astra USA, Inc.*, 2010 WL 2724512
    (N.D. Cal. July 28, 2010) .................................................................................... 8

*Grand Jury Proceedings*, 142 F.3d 1416 (11th Cir. 1998) ................................. 10, 11

*Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981) ............................................................... 7

*Independent Living Ctr. of S. Cal., Inc. v. Maxwell-Jolly*,
    572 F.3d 644 (9th Cir. 2009) ............................................................................. 12

*KBS America, Inc. v. MyTV, Inc.*, 2009 WL 10675936
    (C.D. Cal. Sept. 29, 2009) ................................................................................ 11

*Mevorah v. Wells Fargo Home Mortg., Inc.*, No. 05-cv-1175,
    2005 WL 4813523 (N.D. Cal. Nov. 17, 2005) ................................................... 7

*Parks v. Eastwood Ins. Services, Inc.*, 235 F. Supp. 2d 1082 (C.D. Cal. 2002) ......... 7

*Quezada v. Schneider Logistics Transloading & Distribution*,
    No. 12-cv-2188, 2013 WL 1296761 (C.D. Cal. Mar. 25, 2013) .................... 8, 9

*Stransky v. HealthONE of Denver, Inc.*, 929 F. Supp. 2d 1100 (D. Colo. 2013) ....... 8

*Talavera v. Leprino Foods Company*, No. 15-cv-105,
    2016 WL 880550 (E.D. Cal. Mar. 8, 2016) ........................................................ 7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*UMG Recordings, Inc. v. ES Electrosales Leadsinger Co., Ltd.*,
    2008 WL 11338221 (C.D. Cal. June 18, 2008) .................................................. 11

*Wang v. Chinese Daily News, Inc.*, 132 S. Ct. 74 (2011) ............................................ 7

*Wang v. Chinese Daily News, Inc.*, 623 F.3d 743 (9th Cir. 2010) ............................. 7

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008) ............................. 11, 12

**Federal Rules**

Fed. R. Civ. P. 23 ........................................................................................................ 1, 6

## I. INTRODUCTION

Four months ago, this Court entered a Temporary Restraining Order (TRO) [ECF 146] specifying, through a notice to all appraisers, that CoreLogic will not dissuade its employees from participating in this lawsuit. The TRO prompted CoreLogic to enter into a Stipulated Injunction, which not only reiterated the language of the notice but also specified that CoreLogic was prohibited from communicating with class members regarding this lawsuit, at any time, without submitting language to the Court for approval [ECF 158].

Participation in this case has been extraordinary. Plaintiffs secured a participation rate of over 42% during the opt-in period. Since the Court compelled arbitration for a portion of the collective [ECF 189], so far over 140 appraisers have continued to pursue their claims in individual arbitration. With case participation booming, and with Plaintiffs' class certification deadline approaching, CoreLogic now goes against its own stipulated injunction to intimidate and mislead opt-ins and curb the size of the California class. Specifically, as part of a large round of layoffs, CoreLogic is (1) communicating to terminated opt-ins that their acceptance of a severance may affect their participation in this lawsuit, and (2) offering money to terminated California putative class members in exchange for opt-out agreements. The former is expressly prohibited under the stipulated injunction, which requires CoreLogic to seek the Court's approval before making any communication with opt-ins about the lawsuit. The latter, CoreLogic's "offer of settlement" to California putative class members, is in direct violation of the injunction's prohibition against dissuading class members from participating in the lawsuit, or, in the alternative, the communication is misleading and coercive under Fed. R. Civ. P. 23(d).

Accordingly, Plaintiffs request that the Court (1) invalidate any agreements to opt-out of this lawsuit since June 27, 2019, (2) order corrective notice, (3)

sanction CoreLogic for fees and costs associated with the instant *ex parte* motion and application, (4) require witness testimony at the show cause hearing regarding the nature and scope of CoreLogic's improper contacts, and, should the Court find that any of CoreLogic's improper contacts are not all subject to the stipulated injunction, (5) enter a temporary restraining order prohibiting CoreLogic from communicating with putative class members about this lawsuit.

## II. BACKGROUND

On February 15, 2019, Plaintiffs filed an application for temporary restraining order based on CoreLogic's improper contacts with collective action members. [ECF 134]. The Court granted a temporary restraining order that required CoreLogic to issue the following notice to its appraiser employees:

> You are protected by the Fair Labor Standards Act and have the right to participate freely in the lawsuit regarding overtime wages, Mitchell, et al. v. CoreLogic, brought by Plaintiffs' counsel Bryan Schwartz Law. Your employer is prohibited from retaliating against you in any way because of your participation in the case, including any statements you may make as part of the case.
>
> CoreLogic will not coerce, retaliate against, threaten to retaliate against, intimidate, or *attempt to influence or in any way threaten employees for participating in this lawsuit*.

[ECF 146 at p. 4 (emphasis added)]. Following the TRO, in order to avoid a hearing on whether a preliminary injunction should issue, the parties met and conferred and CoreLogic entered into a stipulated injunction on February 28, 2019 [ECF 158]. The injunction includes the following:

> Defendant and its agents shall have . . . no communications with class members regarding this lawsuit during or after the opt-in period, without first obtaining written permission from the Court. If Defendant wishes to have any such communications, it must submit a statement to the Court setting forth the information that it wishes to

> communicate, the means it intends to use to make the communication, and the identity of the individual(s) who will make the communication.
>
> . . .
>
> CoreLogic will not . . . attempt to influence or in any way threaten employees for participating in this lawsuit.

[ECF 158 at p. 2-3].

Around June 27, 2019, CoreLogic began carrying out a round of large-scale layoffs. While all affected employees have received a termination letter describing their severance offer and terms of separation, the termination letter given to opt-ins contains the following language regarding the lawsuit:

> You may have received a notice informing you of a pending collective action lawsuit brought against CoreLogic on behalf of appraisers claiming violations of the Fair Labor Standards Act ("FLSA") and California law. The Court has not ruled on the merits of the lawsuit and CoreLogic denies any wrongdoing, however, your execution of the Agreement and Release may impact your ability to participate in that lawsuit, should you wish to do so. You are free to consult with an attorney or any other source you feel is appropriate, so you can make a fully informed decision.

*See* Declaration of Deborah Smith, Ex. A. CoreLogic has not sought the Court's approval of the above communication. Christensen Decl. ¶ 3.

Furthermore, the termination letter given to members of the California putative class has the following language about the lawsuit:

> You may have received a notice informing you of a pending class and collective action lawsuit brought against CoreLogic on behalf of appraisers claiming violations of the Fair Labor Standards Act ("FLSA") and California law (the "Action"). The Court has not ruled on the merits of the Action and CoreLogic denies any wrongdoing. Notwithstanding, to avoid the time and expense of litigation, *CoreLogic would like to offer you two thousand five hundred dollars ($2,500) to settle these disputed claims.* Whether you accept or reject the settlement sum will have no impact on your ability to receive your Severance. To be eligible to receive the settlement sum, you must sign

3

> and return the enclosed Release of Disputed Claims within the time-period prescribed by the Company. You are free to consult with an attorney or any other source you feel is appropriate, so you can make a fully informed decision.

*See* Declarations of David Fiamengo, Clark Simonian, Amy Garibay, and Scott Trautman, Exhibit A at p. 1 (emphasis added).

Attached to the termination letter, California putative class members were given a form entitled "Release of Disputed Claims Agreement" focused solely on this lawsuit. The form offers these terminated employees $2,500 if they sign, agreeing to opt out of this lawsuit, within seven calendar days. The signatory on this offer is Corelogic's Associate General Counsel Ursula K. Guzman. *See* Declarations of David Fiamengo, Clark Simonian, Amy Garibay, and Scott Trautman, Exhibit B.

### III. ARGUMENT

#### A. CoreLogic's Communication With Terminated Opt-Ins About This Lawsuit Violates the Stipulated Injunction.

CoreLogic's termination letters to opt-ins mention and discuss the lawsuit. *See* Declaration of Deborah Smith, Ex. A. Upon receipt of this communication, these opt-ins became confused and worried about whether their desire to stay in the case was at odds with their need for the severance money. *See* Declaration of Deborah Smith ¶¶ 10-11. Based on CoreLogic's prior problematic communications with opt-ins about this lawsuit, the Court has entered a TRO and CoreLogic agreed to seek the Court's approval for future communications "during or after the opt-in period." [ECF 158 at p. 2]. The purpose of this injunction was to avoid precisely the sort of confusion and intimidation experienced by Ms. Smith. *See, e.g., Camp v. Alexander*, 300 F.R.D. 617, 624 (N.D. Cal. 2014) ("The caselaw nearly universally observes that employer-employee contact is particularly prone to coercion."). By failing to seek the Court's approval before issuing this communication to opt-ins, CoreLogic has violated two

provisions of the stipulated injunction.[1]

### B. CoreLogic's Offer of Settlement to Terminated California Putative Class Members Violates the Stipulated Injunction.

CoreLogic's offer of settlement to putative class members violates two provisions of the stipulated injunction. First, the injunction prohibits communications with potential class members about the lawsuit "during or after the [FLSA] opt-in period, without first obtaining written permission from the Court." [ECF 158 at 2]. CoreLogic sent this communication to putative class members without seeking permission from the Court.

Second, the injunction provides that "CoreLogic will not . . . attempt to influence . . . employees for participating in this lawsuit." [ECF 158 at 3]. As the putative class member declarants explain, they want to be part of the California class. *See* Declarations of David Fiamengo, Clark Simonian, Amy Garibay, and Scott Trautman ¶ 7. Offering $2,500 in exchange for an opt-out agreement, while simultaneously notifying employees of their termination, and only giving the employee seven calendar days to respond, is an attempt to influence employees, while they are in a highly vulnerable state, to sign away their rights. Furthermore, now that Plaintiffs are preparing to move for class certification, CoreLogic is using the occasion of these layoffs to attempt to greatly limit its exposure over these allegations. If enough putative class members accept this offer, Plaintiffs' ability to

---

[1] In addition to violating the provision of the stipulated injunction requiring the Court's approval before communicating with opt-ins about this lawsuit, the communication violates the injunction's prohibition of misleading communication that may influence opt-ins against participating in the case. As Deborah Smith explains in her declaration, the communication she received was confusing, which is why the injunction is in place. Furthermore the injunction may violate California Rule of Professional Conduct 2-100, since opt-ins are represented by counsel. *See* http://www.calbar.ca.gov/Portals/0/documents/ethics/Opinions/1993-131.htm

show numerosity may be in jeopardy. Employees subject to arbitration are also having this offer extended to them if the employee inquires about it. *See* Declaration of Michael Rath ¶ 6. CoreLogic did not extend this offer to putative class members and employees subject to arbitration until the occasion of their termination, when the employee may be much more susceptible to influence. This is precisely the sort of predatory conduct that the Court prohibited under the TRO and CoreLogic agreed not to engage in under the stipulated injunction.

### C. In the Alternative, CoreLogic's Offer of Settlement to Terminated California Putative Class Members Is Prohibitively Misleading and Coercive Under Rule 23.

In the alternative, should the Court conclude that CoreLogic's offer of settlement to putative class members is outside the scope of the stipulated injunction, the Court should find that this conduct is nevertheless prohibited under Fed. R. Civ. P. 23(d), which authorizes courts to ensure "the fair and efficient conduct of the action." Fed. R. Civ. P. Advisory Committee Notes. "Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981). The district court has broad authority to "limit[] communications between parties and potential class members" in order to avoid "obvious potential for confusion" and adverse effects. *Id*. at 101, 100. *See also Wang v. Chinese Daily News, Inc.*, 623 F.3d 743, 756 (9th Cir. 2010), *judgment vacated on other grounds*, 132 S. Ct. 74 (2011) (noting that "Rule 23(d) gives district courts the power to regulate the notice and opt-out processes and to impose limitations when a party engages in behavior that threatens the fairness of the litigation.").

At the pre-certification stage, courts may restrict communication with putative class members if there is "a clear record and specific findings that reflect . . . the need

for a limitation and the potential interference with the rights of the parties." *Parks v. Eastwood Ins. Services, Inc.*, 235 F. Supp. 2d 1082, 1084 (C.D. Cal. 2002). Courts limit communication with putative class members after there have been "misleading, coercive, or improper communications." *Mevorah v. Wells Fargo Home Mortg., Inc.*, No. 05-cv-1175, 2005 WL 4813523, at *3 (N.D. Cal. Nov. 17, 2005). *See also Belt v. Emcare, Inc.*, 299 F.Supp.2d 664, 667 (E.D. Tex. 2003) ("Courts have found a need to limit communications with absent class members where the communications were . . . an improper attempt to undermine Rule 23 by encouraging class members not to join the suit."). "Whether a communication is misleading or coercive—and therefore warrants judicial intervention—often depends not on one particular assertion, but rather the overall message or impression left by the communication." *Talavera v. Leprino Foods Co.*, No. 15-cv-105, 2016 WL 880550, at *5 (E.D. Cal. Mar. 8, 2016). "A Court therefore 'must examine the context in which the communications were made and the effect of the communications in determining whether, and how much, communication should be restricted.'" *Id*. (quoting *Stransky v. HealthONE of Denver, Inc.*, 929 F. Supp. 2d 1100, 1108-09 (D. Colo. 2013) (finding defendants' misleading statements about potential monetary consequences of outcome "likely to confuse, if not coerce")).

Courts invalidate opt-out agreements solicited before class certification when the agreements were coercively obtained. *See, e.g., Camp v. Alexander*, 300 F.R.D. 617, 625-26 (N.D. Cal. 2014) (finding defendants' precertification *ex parte* written solicitation of opt-outs to be improper due to a "significant power imbalance" even where opt-out declarations were presented by non-management staff). "In considering whether pre-certification communications between employers and employees are sufficiently deceptive or coercive to warrant relief, courts have considered several factors, including whether the employer adequately informed the employees about: (1) the details underlying the lawsuit, (2) the nature and purpose of

the communications, and (3) the fact that any defense attorneys conducting the communications represent the employer and not the employee." *Quezada v. Schneider Logistics Transloading & Distribution*, No. 12-cv-2188, 2013 WL 1296761, at *4 (C.D. Cal. Mar. 25, 2013).

In *County of Santa Clara v. Astra USA, Inc.*, No. 05-cv-3740, 2010 WL 2724512 (N.D. Cal. July 28, 2010), the defendant pharmaceutical company sent refund checks to its customers, including putative class members. The accompanying letter explained that the checks were a refund for overcharged drugs and that acceptance of the refunds constituted accord and satisfaction, and a release of future claims. *Id.* at *1. The district court found the letter misleading, reasoning that the letter "misled the putative plaintiff class about the strength and extent of the plaintiffs' claims, and they were unable to make an informed choice about whether to accept the settlement payment." *Id.* at *5. The court also invalidated the release because of a lack of good faith, ordering that "[a]ny checks cashed will be deducted from any recovery obtained herein (or presumably elsewhere) by the recipients." *Id.* at *6.

Here, although CoreLogic attached a copy of the operative complaint to the offer of settlement and reminded employees that they should feel free to consult with an attorney, the offer is misleading and the context in which it was made is highly coercive. As in *Astra*, where defendant made an offer of settlement without indicating how the offer compared to the alternative of staying in the putative class, CoreLogic did not inform putative class members "about the strength and extent of plaintiffs' claims." *Astra*, 2010 WL 2724512, at *5. CoreLogic further deprived putative class members of an opportunity to make an informed decision by giving employees only seven calendar days, right before the Fourth of July, to decide to accept the offer. As putative class members explain in their declarations, the news of their termination creates tremendous financial stress. *See* Declarations of David Fiamengo, Clark

8

Simonian, Amy Garibay, and Scott Trautman ¶ 8. The "overall message or impression left" by the offer of settlement was one of desperation: despite their desire to remain in the putative class, imminent personal financial pressures make the offer very hard to set aside. *Talavera*, 2016 WL 880550, at *5; *See* Declarations of David Fiamengo, Clark Simonian, Amy Garibay, and Scott Trautman ¶ 8. In this context of immense stress, financial pressures, and time pressure, CoreLogic's apparent mild attempt to follow the non-exhaustive factors enumerated in *Quezada* lacks good faith and is an improper attempt to encourage putative class members to opt out, without sufficient opportunity to make an informed decision.

## IV. REMEDY

### A. The Court Has Authority to Find CoreLogic In Contempt of Court.

Judge Walter in this district has approvingly cited the following standard for establishing civil contempt through an order to show cause from *In re Grand Jury Proceedings*, 142 F.3d 1416, 1424 (11th Cir. 1998):

> [A] plaintiff seeking to obtain the defendant's compliance with the provisions of an injunctive order move[s] the court to issue an order requiring the defendant to show cause why he should not be held in contempt and sanctioned for his noncompliance. [internal citation omitted]. In his motion, the plaintiff cites the provision(s) of the injunction he wishes to be enforced, alleges that the defendant has not complied with such provision(s), and asks the court, on the basis of his representation, to order the defendant to show cause why he should not be adjudged in contempt and sanctioned. If the court is satisfied that the plaintiff has made out a case for an order to show cause, it issues the order to show cause. The defendant, following receipt of the order, usually files a response, either confessing his noncompliance or presenting an excuse, or "cause," therefor. The dispute is thereafter resolved at a show cause hearing, with the issues to be decided at the hearing framed by the show cause order and the defendant's response. At the hearing, if the plaintiff establishes the

> defendant's noncompliance with the court's injunctive order and the defendant presents no lawful excuse for his noncompliance, the court usually adjudges the defendant in civil contempt and imposes a sanction that is likely to prompt the defendant's compliance with the injunction.

*See UMG Recordings, Inc. v. ES Electrosales Leadsinger Co., Ltd.*, No. CV 08-553-JFW (VBKX), 2008 WL 11338221, at *2 (C.D. Cal. June 18, 2008) (Walter, J.) (citing *In re Grand Jury Proceedings*); *KBS America, Inc. v. MyTV, Inc.*, No. CV 08-7753-JFW (JCx), 2009 WL 10675936, at *2 (C.D. Cal. Sept. 29, 2009) (Walter, J.) (citing same).

Because CoreLogic has violated multiple provisions of the stipulated injunction, and because CoreLogic has no legitimate excuse for not seeking the Court's permission before making these communications, a finding of contempt is not only warranted but necessary to compel CoreLogic's compliance with the injunction.

### B. Corrective Action and Corrective Notice Is Warranted.

Should the Court find that one or more of CoreLogic's improper communications are not subject to the stipulated injunction, Plaintiffs request the Court extend its earlier TRO to cover communications with putative class members. The party seeking a TRO must establish that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted). Where there are "serious questions going to the merits," the moving party may still obtain a preliminary injunction where the balance of hardships "tips sharply" in the moving party's favor, and where the moving party also shows a likelihood of irreparable injury and that an injunction is in the public

interest. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

Here, the balance of hardships tips sharply in Plaintiffs' favor and entering a TRO would be in the public interest. *See Independent Living Ctr. of S. Cal., Inc. v. Maxwell-Jolly*, 572 F.3d 644, 657-58 (9th Cir. 2009) (court may consider last two *Winter* factors together). Defendant has no legitimate interest in intimidating putative class members into opting out of this lawsuit. California plaintiffs and opt-ins, on the other hand, will be jeopardized at class certification if they lack numerosity as a result of Defendant's conduct, and those who opt out could lose their right to participate in this action without receiving full information about the potential value of their claims. Restraining Defendant's unlawful conduct will ensure it complies with the principles and precedent under Rule 23(d), preventing employers from misleadingly and coercively interfering with class certification. A TRO will further advance the public interest in ensuring that stipulated injunctions will be protected, and that employees should feel free to report intimidating and confusing communications and vindicate their workplace rights.

### C. Sanctions Are Warranted.

Had CoreLogic sought the Court's approval of its communications, as the stipulated injunction requires, Plaintiffs would have avoided the expense of the instant motion. Plaintiffs therefore request compensation for their fees and costs for this motion in the amount of $23,805.

## V. CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court 1) invalidate any agreements to opt-out of this lawsuit, (2) order corrective notice, (3) sanction CoreLogic for fees and costs associated with the instant *ex parte* motion and application, (4) require witness testimony at the show cause hearing regarding the

nature and scope of CoreLogic's improper contacts, and, should the Court find that CoreLogic's improper contacts are not all subject to the stipulated injunction, (5) enter a temporary restraining order prohibiting CoreLogic from communicating with putative class members about this lawsuit.

DATED: July 8, 2019            **BRYAN SCHWARTZ LAW**

By: */s/ Maren I. Christensen*
Maren I. Christensen (SBN 320013)

*Attorneys for Plaintiff and Putative Class and Collective Action Members*