Matthew C. Helland (CA Bar No. 250451)
helland@nka.com
Daniel Brome (CA Bar No. 278915)
dbrome@nka.com
NICHOLS KASTER, LLP
235 Montgomery Street, Suite 810
San Francisco, CA 94104
Telephone: (415) 277-7235
Facsimile: (415) 277-7238

BRYAN SCHWARTZ LAW
Bryan J. Schwartz (CA Bar No. 209903)
Rachel M. Terp (CA Bar No. 290666)
Natasha T. Baker (CA Bar No. 319381)
Email: Bryan@bryanschwartzlaw.com
Rachel@bryanschwartzlaw.com
Natasha@bryanschwartzlaw.com
180 Grand Avenue, Suite 1380
Oakland, CA 94612
Telephone: (510) 444-9300
Facsimile: (510) 444-9301

*Attorneys for Plaintiffs and Putative*
*Class and Collective Action Members*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARRIETT MITCHELL, JASON SUMMERS and JOSEPH ADAMS, individually, on behalf of others similarly situated, and on behalf of the general public,<br><br>                  Plaintiffs,<br><br>   vs.<br><br>CORELOGIC VALUATION SOLUTIONS, INC., and DOES 1-10, inclusive | Case No. 8:17-cv-02274-DOC-DFM<br><br>**PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR ORDER OF DEFAULT, FINDING OF JURISDICTION, AND FOR SANCTIONS**<br><br>Judge:  Hon. David O. Carter<br><br>Date:  November 18, 2019<br>Time: 8:30 a.m.<br>Place: Courtroom 9D |

1
Defendants.
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFFS' MEM. SUPP. MOT. FOR DEFAULT, JURISDICTION AND SANCTIONS

1

## **Table of Contents**

2    I.    INTRODUCTION ................................................. 1

3    II.   FACTUAL BACKGROUND .................................. 2

4        A.  CoreLogic Moves the Court for an Order Compelling Arbitration ................. 2

5        B.  This Court and the AAA Repeatedly Refer CoreLogic's "Threshold Issues" to

6        Individual Arbitrators ........................................... 3

7        C.  The AAA Closes 110 Cases ............................... 7

8    III.  ARGUMENT ...................................................... 7

9        A.  The Court Should Find that CoreLogic Defaulted On its Obligation to

10       Arbitrate and Should Resume Jurisdiction Over Plaintiffs' Claims. ..................... 8

11       B.  The Court Should Sanction CoreLogic ................. 12

12           i.   The Court should sanction CoreLogic for violating its orders ................. 12

13           ii.  The Court should sanction CoreLogic for vexatious litigation ................ 15

14           iii. California's public policy demands sanctions ............................ 17

15   IV.  CONCLUSION .................................................. 19

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>Table of Authorities</u>

**Cases**

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240 (1975)...............12, 15

*Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83 (2000) ..........17

*Brown v. Dillard's, Inc.*, 430 F.3d 1004 (9th Cir. 2005) ....................................11, 15

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) ................................................12, 15

*Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178 (2017) ...........................12

*Hutto v. Finney*, 437 U.S. 678 (1978) .....................................................................16

*Lane, Ltd. v. Larus & Brother Co.*, 243 F.2d 364 (2d Cir. 1957) ...........................11

*Link v. Wabash R. Co.,* 370 U.S. 626 (1962) ..........................................................12

*McLellan v. Fitbit, Inc.*, 2018 WL 3549042 (N.D. Cal. July 24, 2018).16, 17, 18, 19

*Menorah Ins. Co., Ltd. v. INX Reinsurance Corp.*, 72 F.3d 218 (1st Cir. 1995) .....11

*Radiator Specialty Co. v. Cannon Mills*, 97 F.2d 318 (4th Cir. 1938)....................11

*Sink v. Aden Enters., Inc.*, 352 F.3d 1197 (9th Cir. 2003) ...............................passim

*Toledo Scale Co. v. Computing Scale Co.*, 261 U.S. 399 (1923)............................16

**Statutes**

9 U.S.C. § 3..............................................................................................................8

PLAINTIFFS' MEM. SUPP. MOT. FOR DEFAULT, JURISDICTION AND SANCTIONS

## I.   INTRODUCTION

This country's justice system, enshrined in the Constitution and funded primarily through tax payer dollars, provides those under its jurisdiction with a cost-effective method for resolving individual and group-wide disputes. That dispute-resolution process is reinforced by due process guarantees, appellate oversight, and centuries of legal precedent.

CoreLogic chose to remove several hundred Plaintiffs from that justice system, opting instead to resolve their claims through individual arbitrations at a great administrative expense and without judicial oversight or meaningful appellate review. But that process quickly became too expensive for CoreLogic's liking. And when CoreLogic disagreed with the AAA's administration of these individual arbitrations, CoreLogic refused to pay any additional fees to AAA or otherwise participate in 110 arbitrations filed in states other than California or Minnesota. CoreLogic's refusal to play by the rules it imposed on Plaintiffs constitutes a default on its contractual obligation to arbitrate and a willful disregard for two orders from this Court compelling the parties to arbitrate.

Plaintiffs now come before the Court seeking recourse for CoreLogic's willful disobedience to this Court's order compelling arbitration—an order CoreLogic requested over Plaintiffs' strenuous objections. The Court should hold that CoreLogic defaulted on its obligation to arbitrate, and on that basis resume jurisdiction of cases it previously ordered to arbitration. After doing so, the Court should sanction CoreLogic and/or its counsel for CoreLogic's willful disobedience of this Court's orders compelling the parties to arbitrate, and for acting in bad faith, vexatiously, wantonly, and/or for oppressive reasons in refusing to abide by the AAA's administrative oversight of the arbitrations CoreLogic asked this Court to compel. Plaintiffs therefore request leave to submit their fees and costs associated with opposing CoreLogic's motion to compel arbitration and litigating these arbitrations, for the Court to review in determining the appropriate sanction.

## II.   FACTUAL BACKGROUND

### A. CoreLogic Moves the Court for an Order Compelling Arbitration

On February 12, 2019 CoreLogic filed a motion to compel arbitration. (ECF No. 128.) In that motion, CoreLogic argued that its arbitration agreements delegate all gateway issues to the arbitrator. *See*, *e.g.*, ECF No. 128-1 at 18-19. According to CoreLogic, the Court's only role on its motion to compel was to "determine that an agreement to arbitrate exists." *Id.* at 19. "Once such a finding is made, the Court is obligated to compel the matter to arbitration, *with all other challenges to be resolved by the arbitrator*." *Id.* (emphasis added). CoreLogic identified certain gateway issues as principally important in the arbitrations: "the gateway issues of arbitrability that have been delegated *to the arbitrator* will determine whether any respective Plaintiff or opt-in member can participate in this action. *Until those gateway issues are resolved*, it is unknown how many, if any, of those individuals may ultimately be able to participate in the instant action." *Id.* at 20 (emphasis added). CoreLogic cited the need to arbitrate gateway issues in support of its request for a complete stay of this litigation: "Until such time as the enforceability of the arbitration agreements are resolved in arbitration, it is uncertain as to who may participate in this action creating significant problems for class certification and decertification, and wholly inefficient and unnecessarily complicated piecemeal discovery and case management." *Id.* at 21-22.

CoreLogic repeated these arguments on reply in support of its motion. *See*, *e.g.*, ECF No. 161 at 4 ("[T]his Court need only determine that agreements to arbitrate exist. Once that is done, the Court must compel the parties to arbitration, with *all other challenges to be resolved **by the arbitrator**.") (emphasis added); *id.* at 6 ("the parties clearly and unmistakably delegated gateway issues of arbitrability, including any argument of waiver, to the arbitrator"). CoreLogic concluded its reply by requesting an order compelling "Plaintiffs Summers and Adams, and any and all opt-ins who executed the subject employment application or separation agreement,

to binding arbitration before the American Arbitration Association, pursuant to the

AAA Employment Rules, in the county in which the opt-in worked." ECF No. 161

at 17.

At a discovery hearing while CoreLogic's Motion to Compel was pending,

the Court questioned counsel about the logistics and financing of mass and separate

arbitrations. Counsel cited the thousands of individual arbitrations filed against

Uber, noting:

> Uber thought that they won a big battle by prevailing on a Motion to
> Compel Arbitration, but the response from the plaintiff's side was
> 2,000 individual arbitration claims. And now the company's saying,
> uh, that's -- *you know, that's abusive and, uh, bad faith and, you know,*
> *we – we're not gonna proceed with those.* And the plaintiff's side is
> saying you – *You asked for it.*
> . . .
> Uber's in a tough spot, because they're complaining about following a
> process that they requested, in fact, demanded with respect to a motion
> because they didn't believe that so many people would be interested in
> pursuing individual arbitrations.

ECF 218-2: Brome Decl. Exh. A, Feb. 21, 2019 Transcript at 32. (emphasis in

original). Counsel's words have proven prophetic.

On April 4, 2019, this Court grated Defendants' motion to compel

arbitration, compelling Plaintiffs who signed arbitration agreements to proceed in

arbitration. ECF No. 189. Plaintiffs complied with that order; to date, 157 opt-in

Plaintiffs have filed individual demands for arbitration. (Helland Decl. ¶ 2.)

**B. This Court and the AAA Repeatedly Refer CoreLogic's "Threshold
Issues" to Individual Arbitrators**

Plaintiffs began filing arbitration demands in late April 2019. (Helland Decl.

¶ 2.) CoreLogic's obstruction of the arbitration process began almost immediately.

On May 9, 2019, Defense Counsel wrote to the AAA seeking dismissal of the sixty

then-pending arbitrations based on alleged insufficiencies with the consent forms

attached to the arbitration demands. (Helland Decl. Exh. 1.) Claimants responded to

the letter immediately, pointing out to AAA that CoreLogic's letter came on the same day it owed $98,800 in filing fees. (Helland Decl. Exh. 2.) Claimants also argued that any dispute as to the sufficiency of Claimants' consent forms was for the individual arbitrators to decide. (*Id.*) The AAA agreed, holding that Claimants' demands met the AAA's filing requirements and triggered CoreLogic's obligation to pay filing fees. (Helland Decl. Exh. 3.) The AAA reserved CoreLogic's challenge to the consent forms for arbitrator review. (*Id.*)

CoreLogic then brought its challenges to this Court, filing an *ex parte* application to enjoin the very arbitrations it asked this Court to compel. ECF No. 217. CoreLogic raised three issues: 1) the sufficiency of Claimants' consent forms; 2) the alleged unauthorized practice of law in Florida, Michigan, Oregon and Virginia; and 3) a statute of limitations defense as to three claimants. ECF No. 217-1. CoreLogic alleged that Claimants improperly filed these arbitration demands (again, the very demands CoreLogic requested and the Court ordered) for the sole purpose of straddling CoreLogic with hundreds of thousands of dollars of arbitration fees. *Id.* at 2. In response, Claimants noted, *inter alia*, that Counsel had intended to file the necessary paperwork with the state bars of Florida and Oregon upon receipt of case numbers with the AAA, but nevertheless began filing that paperwork without case numbers promptly when CoreLogic raised the issue. ECF No. 218 at 9-11. The Oregon State Bar responded immediately, asking why counsel had not reported the arbitration case number and asking that Counsel hold future filings until after a case number was assigned in arbitration. (Helland Decl. Exh. 4.)

The Court denied CoreLogic's *ex parte* application on first business day after it was filed. The Court held, in relevant part:

> The Court need not address each of CoreLogic's arguments or wade into the Virginia, Oregon, Michigan, and Florida rules of professional conduct. CoreLogic moved this Court to order Plaintiffs to arbitrate their claims. As CoreLogic previously argued, issues of arbitrability or the implication of statutes of limitation must be resolved by the arbitrator. Even if the Court were to determine the merits of a particular

-4-

> arbitration, the requested injunction and stay of all arbitration proceedings is overbroad. CoreLogic asked for resolution of any and all disputes by the arbitrator. Having compelled arbitration, the Court will not now stay those proceedings due to associated costs.

ECF No. 220 at 3.

This Court's swift rejection of CoreLogic's *ex parte* request was not enough to prevent CoreLogic from securing a 60 day stay of its payment deadlines under Rule 1 of the AAA's Employment Rules. Rule 1 provides:

> If, within 30 days after the AAA's commencement of administration, a party seeks judicial intervention with respect to a pending arbitration and provides the AAA with documentation that judicial intervention has been sought, the AAA will suspend administration for 60 days to permit the party to obtain a stay of arbitration from the court.

Rule 1, AAA Emp. Arb. Rules. The AAA granted CoreLogic a 60 day stay on May 31, 2019—even though the Court had already rejected CoreLogic's request for Court intervention—based on CoreLogic's representation that it might seek judicial intervention from some other forum. (Helland Decl. ¶ 3, Exh. 5.) CoreLogic never sought additional court intervention. (Helland Decl. ¶ 3.)

Once the AAA resumed administration, it set a filing fee payment deadline of July 30, 2019. (Helland Decl. Exh. 6.) CoreLogic completed timely payment of these filing fees. But on August 9, during an administrative call with the AAA, CoreLogic requested the opportunity to present its "threshold issues" to the AAA prior to appointment of arbitrators. (Helland Decl. Exh. 7.) The AAA allowed CoreLogic to brief the issues over Claimants' objections. (*See id.*) CoreLogic's brief, submitted August 27, 2019, largely repeated the issues CoreLogic raised in its *ex parte* request to this Court except that CoreLogic dropped its statute of limitations argument. (Helland Decl. Exh. 8.) Claimants responded on September 3, arguing (for the third time) that CoreLogic's issues were not ripe for administrative resolution and should instead be addressed to individual arbitrators. (Helland Decl.

Exh. 9 at 2-3.)[1] The AAA rejected CoreLogic's threshold challenges on September 9, 2019, holding (again) that Claimants had met their filing requirements and determining that all other issues should be raised with individual arbitrators after appointment. (Helland Decl. Exh. 10.)

The AAA continued to administer the arbitrations after this ruling, issuing strike lists and setting deadlines, including the deadline for CoreLogic to pay a $750 administrative fee in each arbitration. (*See* Helland Decl. Exh. 11.) One such deadline was a September 30 deadline to submit strike lists and conflict checks in 14 arbitrations filed in 5 states. (Helland Decl. ¶ 4.)

On September 27, 2019 a representative from the AAA informed Plaintiffs' Counsel of a phone call from Defense counsel requesting prompt resolution of CoreLogic's threshold issues and requesting an extension of the September 30 deadline. (*See* Helland Decl. Exh. 12.)  The AAA representative also asked Plaintiffs' Counsel why the parties had not appointed a Special Master to resolve these issues. (*Id.*) Plaintiffs' Counsel responded that they did not consent to the appointment of a Special Master. (*Id.*) The AAA never provided a written account of Defense Counsel's phone call with the AAA, but nevertheless continued the September 30 strike list deadline to October 7, 2019. (Helland Decl. Exh. 13.)

CoreLogic did not meet that deadline. Instead, on October 7, 2019, CoreLogic informed AAA that it "will not proceed with any non-California or non-Minnesota arbitration, or pay any further fees in connection with those proceedings, until the threshold issue of Claimant's Counsel's unauthorized practice of law is determined." (Helland Decl. Exh. 14.) CoreLogic accused the AAA of "facilitating and enabling Claimant's Counsel's unauthorized practice of law" and "encouraging

---

[1] Claimants also argued that CoreLogic's challenge to Claimants' consent forms failed on the merits, since consent forms are not required for individual FLSA cases. (*See* Helland Decl. Exh. 9 n.2.) CoreLogic has since dropped its challenge to Claimants' consent forms.

and, in fact, requiring CoreLogic's counsel to similarly engage in the unauthorized practice of law, which they will not do." (*Id.*) CoreLogic demanded the return of all its filing and administrative fees "[i]f the AAA refuses to determine this threshold issue." (*Id.*)

### C. The AAA Closes 110 Cases

On October 2, 2019 the AAA closed three case for CoreLogic's failure to pay filing fees. (Helland Decl. Exh. 15.) On October 14, 2019, the AAA notified the parties it would be closing a total of 110 cases for CoreLogic's failure to pay fees. (Helland Decl. Exh. 16.)[2] The file closing letters advise that AAA was "closing [its] file in the above matter as Respondent has confirmed they will not remit payment for arbitrator compensation." (*See* Helland Decl. Exh. 17.)

## III.   ARGUMENT

CoreLogic asked this Court to compel arbitration, but when it disagreed with the AAA's administration of those cases, CoreLogic refused to participate in the arbitrations or pay its filing fees. The AAA's communications make clear that it closed 110 individual arbitration cases because "Respondent has confirmed they will not remit payment for arbitrator compensation." (*See* Helland Decl. Exhs. 16-17.) In this situation the Court should hold that CoreLogic defaulted on its obligation to arbitrate and reassert jurisdiction over Plaintiffs' claims. *See Sink v. Aden Enters., Inc.*, 352 F.3d 1197, 1199 (9th Cir. 2003) (holding that the district court properly confirmed an arbitrator's finding of default based on a party's failure to pay filing fees). Moreover, because CoreLogic's default was in violation of this Court's order requiring arbitration—an order CoreLogic *requested over Plaintiffs' objections*—the Court should also sanction CoreLogic in the amount of the fees and costs Plaintiffs' expended opposing CoreLogic's motion to compel arbitration and then pursuing the arbitrations CoreLogic abandoned.

---

[2] The Letter from AAA notes it will be closing 111 cases, but Claimants count 110 closed cases.

**A. The Court Should Find that CoreLogic Defaulted On its Obligation to Arbitrate and Should Resume Jurisdiction Over Plaintiffs' Claims.**

The Federal Arbitration Act ("FAA") requires that a court must stay proceedings pending arbitration upon concluding that an arbitrable dispute exists. 9 U.S.C. § 3. However, a court may only issue a section 3 stay if "the applicant for the stay is not in default in proceeding with such arbitration." *Id.* Accordingly, Plaintiffs ask the Court to first hold that CoreLogic was in default in 110 arbitrations, and then resume jurisdiction over these cases, which it previously compelled to arbitration. The finding of default is critically important under the FAA because it establishes the basis for the parties' return to Court, it indisputably restores this Court's jurisdiction, and it will prevent CoreLogic from arbitrating with these Plaintiffs for any claims in the future.

*Sink* is instructive. In *Sink*, like here, the defendant refused to participate in an arbitration that was compelled after an original filing in district court. *Sink*, 352 F.3d at 1198-99. But when the plaintiff sought to resume litigation in court, the defendant was suddenly willing to participate in arbitration. *Id.* at 1199. The defendant requested an order compelling the parties back to arbitration under Section 4 of the FAA, arguing that since Section 4 does not contain a clause preventing such an order when the requesting party has defaulted, the Court was obligated to refer the case back to arbitration at the defaulting party's request. *See id.* at 1200. The Ninth Circuit disagreed:

> In our view, it cannot sensibly be maintained that a district court is required to enter an order under § 4 compelling parties to return to arbitration under circumstances where § 3 precludes the district court from staying its own proceeding. Such an interpretation of § 4 would interfere with the manifest intent of Congress, as expressed in § 3, that arbitration is to be furthered where a party has not defaulted in arbitration, and would lead to duplicative and potentially inconsistent decisions if an arbitral forum and a court action were to proceed at the same time on the same claim.

*Sink*, 352 F.3d at 1200–01.

Accordingly, "[i]f a party defaults after an initial stay and reference to arbitration, that permits a district court to vacate the § 3 stay." *Sink*, 352 F.3d at 1201. Here, the Court should hold that CoreLogic defaulted in the arbitrations, and then resume jurisdiction here based on CoreLogic's default. Simply sending the parties back to arbitration under Section 4 "would [] allow a party refusing to cooperate with arbitration to indefinitely postpone litigation." *Id.* A finding of default is critical under *Sink*, because without it CoreLogic could still seek an order compelling Plaintiffs to arbitrate again—on the FLSA claims at issue in this case or on any other claim between the parties. If that happens, CoreLogic "could then default a second time, and [plaintiffs'] remedy, again, would be another order compelling arbitration. This cycle could continue, resulting in frustration of the [plaintiffs'] attempts to resolve [their] claims." *Id.* The Court should not condone CoreLogic's abuse of the arbitral forum. The Court should hold that CoreLogic is in default, and on that basis resume jurisdiction over Plaintiffs' claims.

In meet and confer discussions leading up to this motion, CoreLogic proposed a joint stipulation whereby the parties would voluntarily return under the Court's jurisdiction. (Helland Decl. ¶ 5; Exh. 18.)[3] That resolution is unsatisfactory for several reasons. First, it presupposes that Plaintiffs return to this Court willingly, which is not the case. Plaintiffs return to this Court *only* because CoreLogic has defaulted on its obligation to arbitrate. Second, Plaintiffs expressly seek a judicial finding that CoreLogic defaulted on its obligation to arbitrate, and CoreLogic has refused to stipulate to that relief. (Helland Decl. ¶ 5.) The finding of default is critically important under the FAA because it establishes the basis for this Court's jurisdiction; namely, that CoreLogic's default in the arbitrations eliminates

---

[3] Defense Counsel sent the draft stipulation already executed by Bryan Schwartz. (Helland Decl. ¶ 5.) Mr. Schwartz did not execute or otherwise agree to the stipulation. (*Id.*)

the judicial authority to compel arbitration under the arbitration agreements at issue. *See Sink*, 352 F.3d at 1201. Third, a finding of default ensures that Plaintiffs will experience no prejudice in this case or in any future litigation resulting from CoreLogic's abuse of the arbitral process.[4] Of course CoreLogic did not offer to stipulate to sanctions, so this motion would have been necessary regardless of a stipulation to the Court's jurisdiction.

In response to this motion, CoreLogic will likely justify its failure to participate in arbitration by pointing to its repeated requests for the AAA to resolve certain "threshold issues" before appointing arbitrators or requiring payment of additional fees. CoreLogic has referred to Plaintiffs' arbitration demands—demands it asked this Court to order—as "sham" arbitrations that should be dismissed prior to the appointment of an arbitrator. Setting aside Plaintiffs' disagreement with the substance of CoreLogic's position, CoreLogic's desire for collective resolution of its "threshold issues," and its displeasure with the AAA's refusal to do so, does not relieve CoreLogic of its contractual and court-ordered obligation to arbitrate. As the Ninth Circuit noted in a similar case:

> If Dillard's believed Brown's claim was meritless, its proper course of
> action was to make that argument in arbitration. Instead, Dillard's

---

[4] Even in proposing a stipulated resolution, CoreLogic cannot help itself from seeking procedural advantage. For example, under CoreLogic's proposed stipulation, the FLSA statute of limitations for each Plaintiff would run between the date the Court compelled arbitration and the date each Plaintiff filed their individual arbitration case. *See* Helland Decl. Exh. 18. CoreLogic also limited its agreement not to compel future arbitrations to the FLSA claims asserted in this case. *See id.* That proposal is insufficient because CoreLogic has asserted retaliatory counterclaims against those Claimants with whom it is willingly arbitrating, *see* Helland Decl. ¶ 6, and could conceivably sue Plaintiffs in arbitration after this case is complete. To that end, CoreLogic's proposed stipulation provides that "nothing [t]herein . . . shall impact CoreLogic's right to compel arbitration of any other matter or of any other person." *See* Helland Decl. Exh. 18.  These are just three examples of CoreLogic seeking strategic advantage from an "agreed" return to Court that a default finding would eliminate.

refused to participate in the arbitration process at all. Under general principles of California contract law, Dillard's breach of its obligations under the arbitration agreement deprives it of the right to enforce that agreement.

*Brown v. Dillard's, Inc.*, 430 F.3d 1004, 1010 (9th Cir. 2005).

In *Brown*, like here, the employer argued that it should not have been required to arbitrate claims it believed were improperly initiated. *Brown*. 430 F.3d at 1010. In rejecting that argument, the Ninth Circuit issued a cautionary declaration to employers gaming the system by refusing to arbitrate:

> [T]his case displays a dark side of our nation's policy in favor of arbitration. When a defendant in a judicial forum refuses to respond to a complaint that is properly filed and served, the court has the power to enter and enforce a default judgment. Arbitration works differently. The American Arbitration Association could not compel Dillard's to pay its share of the filing fee, and in the absence of the fee it could not proceed. Brown had no choice but to come to court. Many people in Brown's position would simply have given up. Because she did not, ***we have the occasion to make clear that when an employer enters into an agreement requiring its employees to arbitrate, it must participate in the process or lose its right to arbitrate.***

*Brown*, 430 F.3d at 1013 (emphasis added).[5] Plaintiffs respectfully request that the Court follow *Brown* and *Sink*, hold that CoreLogic defaulted on its obligation to

---

[5] *See also Menorah Ins. Co., Ltd. v. INX Reinsurance Corp.*, 72 F.3d 218, 222-23 (1st Cir. 1995) ("Arbitration clauses were not meant to be another weapon in the arsenal for imposing delay and costs in the dispute resolution process."); *Lane, Ltd. v. Larus & Brother Co.*, 243 F.2d 364, 367 (2d Cir. 1957) ("A party cannot raise unjustifiable objections to a valid demand for arbitration, all the while protesting its willingness in principle to arbitrate and then, when the other side has been forced to abandon its demand, seek to defeat a judicial determination by asking for arbitration after suit has been commenced."); *Radiator Specialty Co. v. Cannon Mills*, 97 F.2d 318, 319 (4th Cir. 1938) ("Arbitration laws are passed to expedite and facilitate the settlement of disputes and avoid the delay caused by litigation. It was never intended that these laws should be used as a means of furthering and extending delays.")

1  arbitrate, hold that CoreLogic has lost its right to arbitrate, and resume jurisdiction

2  over the 110 cases the AAA has closed due to CoreLogic's refusal to participate.

3  **B. The Court Should Sanction CoreLogic**

4  In addition to finding that CoreLogic defaulted and resuming jurisdiction, the

5  Court should also sanction CoreLogic for its direct violation of the Court's orders

6  compelling arbitration. Sanctions are warranted because CoreLogic willfully

7  disobeyed two orders of this Court, and also because CoreLogic acted in bad faith,

8  vexaciously, wantonly, and / or for oppressive reasons in refusing to participate in

9  the dispute-resolution process it selected and this Court compelled.

10  ### i. *The Court should sanction CoreLogic for violating its orders*

11  "Federal courts possess certain 'inherent powers,' not conferred by rule or

12  statute, 'to manage their own affairs so as to achieve the orderly and expeditious

13  disposition of cases.'" *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178,

14  1186 (2017) (quoting *Link v. Wabash R. Co.,* 370 U.S. 626, 630–631 (1962)).

15  Moreover, "it is firmly established that the power to punish for contempts is

16  inherent in all courts. This power reaches both conduct before the court and that

17  beyond the court's confines, for the underlying concern that gave rise to the

18  contempt power was not merely the disruption of court proceedings. Rather, it was

19  disobedience to the orders of the Judiciary, regardless of whether such disobedience

20  interfered with the conduct of trial." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44

21  (1991) (internal citations and quotations omitted). Accordingly, "a court may assess

22  attorneys' fees for the willful disobedience of a court order . . . ." *Alyeska Pipeline*

23  *Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258 (1975).

24  Here, as the Court is well aware, CoreLogic moved for an order compelling

25  certain opt-in Plaintiffs to arbitrate their claims. *See* ECF No. 128. Plaintiffs

26  opposed that motion. *See* ECF No. 150. The Court sided with CoreLogic, ordering

27  that Plaintiffs who signed arbitration agreements must proceed in arbitration. ECF

28  No. 189.

1    Upon receipt of the Court's order granting CoreLogic's motion to compel

2 arbitration, Plaintiffs did what the Court ordered them to do; they filed their claims

3 in arbitration. This was no simple task. Plaintiffs' Counsel has spent hundreds of

4 hours communicating with its clients, drafting arbitration demands, corresponding

5 with the AAA, responding to CoreLogic's repeated attempts to delay and disrupt

6 the arbitration process, researching arbitrators, responding to strike lists, submitting

7 conflict checks to the AAA, and complying with various state bar rules regarding

8 out-of-state attorney practice in arbitration. (Helland Decl. ¶ 7.) Moreover,

9 Plaintiffs have spent tens of thousands of dollars in AAA filing fees ($300 per case)

10 and state bar filing fees (for example, $250 times 26 Florida cases). (*Id.* ¶ 8.)

11    CoreLogic, on the other hand, has chosen to willfully defy the Court's order

12 compelling arbitration *and* the Court's order denying CoreLogic's *ex parte* request

13 to enjoin the arbitrations. The Court's order granting CoreLogic's motion to compel

14 arbitration left no room for CoreLogic to exit that process if it disagreed with

15 AAA's administration of the cases. *See* ECF No. 189. The Court made that much

16 clear in its order denying CoreLogic's *ex parte* request to enjoin the arbitrations:

17
18    CoreLogic moved this Court to order Plaintiffs to arbitrate their
   claims. As CoreLogic previously argued, issues of arbitrability or the
19   implication of statutes of limitation must be resolved by the arbitrator.
   . . . CoreLogic asked for resolution of any and all disputes by the
20   arbitrator. Having compelled arbitration, the Court will not now stay
   those proceedings due to associated costs.
21

22 ECF No. 220 at 3.

23    As the Court recognized at the February 21, 2019 hearing, CoreLogic's

24 strategy to compel arbitration carried with it certain risks. One was the cost of

25 individual arbitrations. CoreLogic rolled the dice in hopes that Plaintiffs would

26 abandon their claims after being compelled to arbitration—and CoreLogic lost this

27 bet. *See* ECF No. 217-1 at 15 (arguing that participating in the arbitrations this

28 Court ordered, and paying non-refundable AAA fees, would cause CoreLogic

-13-

"irreparable harm"). CoreLogic must now live with the consequences of its litigation strategy, expensive as they may be. The high cost of AAA arbitration is no excuse for CoreLogic to defy this Court's orders requiring arbitration.

Another risk in CoreLogic's strategy was delegating case management authority of these individual cases to the AAA—and, in the process, abandoning judicial and appellate oversight of case administration. CoreLogic raised its "threshold issues" with the AAA on at least three different occasions. (*See* Helland Decl. Exhs. 1, 7, 8, 12, 15.) Each time, the AAA determined that CoreLogic's issues could not be addressed prior to CoreLogic's payment of fees and the appointment of an arbitrator. (*See* Helland Decl. Exhs. 3, 10, 16.)[6] Because CoreLogic chose to bring these disputes into arbitration, thus waiving full judicial oversight and meaningful appellate review, CoreLogic was bound to comply with the AAA's administrative response to its "threshold" challenges.

CoreLogic therefore violated this Court's orders compelling arbitration when it informed the AAA it "will not proceed with any non-California or non-Minnesota arbitration, or pay any further fees in connection with those proceedings" until the AAA resolved its threshold issues. (Helland Decl. Exh. 14.) CoreLogic's contempt for this Court's authority is exacerbated by its previous position that the arbitration agreements delegated *all issues*, including questions of arbitrability, to the arbitrator. *See* ECF No. 128-1 at 9-10, 13-14; ECF No. 135 at 1, 2-3.  CoreLogic reversed course only when a dispute arose that CoreLogic wanted resolved on a collective basis before paying for the appointment of arbitrators. CoreLogic's

---

[6] The AAA rules provide limited mechanisms for administrative oversight and review of disputes, which are outlined in the Administrative Review Council Overview and Guidelines. *See* https://www.adr.org/sites/default/files/document_repository/AAA_AdminReviewCounsel_Guidelines.pdf (last visited October 17, 2019). The AAA determined that CoreLogic's "threshold issues" were not suitable for Administrative Review Council review. *See* Helland Decl. Exh. 10.

brazen violation of a Court order *it requested* warrants sanctions. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991) ("a court may assess attorneys fees as a sanction for the 'willful disobedience of a court order'") (quoting *Alyeska Pipeline Serv. Co.*, 421 U.S. at 258).[7]

CoreLogic's refusal to arbitrate is a sanctionable violation of the Court's orders regardless of the merit of its "threshold" challenges. The Court's orders address the method of dispute resolution—arbitration—and the forum for that resolution—the AAA. CoreLogic willfully violated the Court's orders by refusing to participate in the ordered method of dispute resolution based on its disagreement with the forum's case administration. The *Brown* case from the Ninth Circuit is directly on point: "If Dillard's believed Brown's claim was meritless, its proper course of action was to make that argument in arbitration. Instead, Dillard's refused to participate in the arbitration process at all." *Brown*, 430 F.3d at 1010. In *Brown*, Dillard's refusal to arbitrate constituted breach of contract. Here, CoreLogic's refusal is a breach of the contract *and* a willful violation of this Court's orders. The Court should sanction CoreLogic and/or its counsel.

### ii.   *The Court should sanction CoreLogic for vexatious litigation*

In addition to sanctioning CoreLogic for violating its orders, the Court should sanction CoreLogic for "act[ing] in bad faith, vexatiously, wantonly, or for oppressive reasons." *Alyeska,* 421 U.S. at 258–259. This Court "has the unquestioned power to award attorney's fees against a party who shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court

---

[7] The final passage of Defense Counsel's email to AAA reveals the dark underbelly of forced arbitration. After accusing the AAA of "facilitating and enabling" the issues of which it complains, counsel writes: "CoreLogic remains willing to engage a Special Master or panel of arbitrators, at CoreLogic's expense, to resolve this threshold issue.  If the AAA refuses to determine this threshold issue, CoreLogic demands the return of its filing and administrative fees in all of the non-California and non-Minnesota arbitrations." (Helland Decl. Exh. 14.) CoreLogic's economic coercion of the AAA exposes the uneven playing field in the arbitral forum.

order." *Hutto v. Finney*, 437 U.S. 678, 690 n. 14 (1978). A fee award "vindicates judicial authority without resort to the more drastic sanctions available for contempt of court and makes the prevailing party whole for expenses caused by his opponent's obstinacy." *Id.*[8] Here, CoreLogic acted vexatiously and in bad faith by continuing to press its "threshold issues" after both this Court and the AAA rejected its repeated requests for early resolution, and then by refusing to arbitrate at all. CoreLogic's unwarranted challenges and refusal to arbitrate delayed and disrupted this litigation; the Plaintiffs on whom CoreLogic defaulted filed arbitration demands in April—approximately six months ago. Now, these Plaintiffs are right back where they were when this Court compelled them to arbitration on April 9, 2019.

CoreLogic's strategic non-participation in these arbitrations, which is clearly motivated by its desire to avoid the high cost of the dispute resolution process *it chose*,[9] offends this Court's judicial authority, the sanctity of the Federal Arbitration Act, and the AAA's authority to administer cases properly referred to arbitration. It is important for courts to identify and name abuses of the arbitration process when they occur. *See*, *e.g.*, *McLellan v. Fitbit, Inc.*, 2018 WL 3549042, at *6 (N.D. Cal. July 24, 2018) (awarding sanctions because "Fitbit and its lawyers at Morrison & Foerster must be held to account for their bad-faith litigation tactics" in refusing to participate in court-ordered arbitration).

In *McLellan*, Fitbit refused to arbitrate after tendering a settlement offer that it believed constituted full resolution of the claimant's claims. *McLellan*, 2018 WL 3549042, at *2. But in *McLellan*, just like here, the arbitration involved "plaintiffs'

---

[8] Fees are also an appropriate sanction for civil contempt, if the Court elects to hold CoreLogic in contempt of its orders. *See Toledo Scale Co. v. Computing Scale Co.*, 261 U.S. 399, 428 (1923).

[9] *See* ECF No. 217-1 at 15 (arguing that participating in the arbitrations this Court ordered, and paying non-refundable AAA fees, would cause CoreLogic "irreparable harm").

1  challenges to the scope and enforceability of the arbitration clause . . . ." *Id.* By

2  refusing to participate in the arbitration, "Fitbit delayed and impeded the arbitration

3  on frivolous grounds . . . ." *Id.* at 6.

4       The *McLellan* court also recognized that an employer cannot unilaterally

5  decide which claims it will arbitrate and which it will not:

6       Fitbit's contention that it can exempt itself from arbitration whenever
7       it 'rationally' prefers to settle is entirely unfounded. Interpreting
8       Fitbit's Terms of Service to give it sole discretion over when it will
        arbitrate a claim would make it unconscionable and unenforceable.
9

10  *McLellan*, 2018 WL 3549042, at *6. The same is true here. Having sought an order

11  compelling arbitration of *all* issues—even threshold issues of arbitrability—

12  CoreLogic is without justification in refusing to arbitrate when the AAA refused to

13  resolve its threshold concerns prior to appointment of arbitrators. If CoreLogic

14  argues in response to this motion that it justifiably refused to arbitrate these

15  threshold issues, the Court should hold that CoreLogic's contractual promise to

16  arbitrate threshold issues is illusory, thus rendering *all* of CoreLogic's arbitration

17  agreements unconscionable and unenforceable. *See Armendariz v. Found. Health*

18  *Psychcare Servs., Inc.*, 24 Cal. 4th 83, 120 (2000) ("an arbitration agreement

19  imposed in an adhesive context lacks basic fairness and mutuality if it requires one

20  contracting party, but not the other, to arbitrate all claims arising out of the same

21  transaction or occurrence or series of transactions or occurrences").

22       **iii.   *California's public policy demands sanctions***

23       Lastly, the Court should award sanctions because California's public policy

24  demands it. On October 13, 2019, Governor Newsom signed SB 707 into law. This

25  bill, which takes effect January 1, 2020, will require courts to award *mandatory*

26  sanctions when a drafting party fails to promptly pay arbitration fees. *See*

27  https://leginfo.legislature.ca.gov/faces/billTextClient.xhtml?bill_id=201920200SB7

28  07 (last visited October 16, 2019). Those sanctions shall take the form of "the

reasonable expenses, including attorney's fees and costs, incurred by the employee or consumer as a result of the material breach." *Id.* The bill also authorizes a court to impose "a terminating sanction by one of the following orders: (A) An order striking out the pleadings or parts of the pleadings of the drafting party. (B) An order rendering a **judgment** by default against the drafting party. (3) A ***contempt sanction*** by an order treating the drafting party as in contempt of court." *Id.* Moreover, "[t]he recovery of arbitration fees, interest, and related attorney's fees shall be without regard to any findings on the merits in the underlying action or arbitration." *Id.* (emphasis added). The Legislature's statements of public policy in SB 707 apply directly to CoreLogic's behavior in this case:

> **SECTION 1.** The Legislature finds and declares all of the following:
> . . .
> (c) A company's failure to pay the fees of an arbitration service provider in accordance with its obligations contained within an arbitration agreement or through application of state or federal law or the rules of the arbitration provider hinders the efficient resolution of disputes and contravenes public policy.
> (d) A company's strategic non-payment of fees and costs severely prejudices the ability of employees or consumers to vindicate their rights. This practice is particularly problematic and unfair when the party failing or refusing to pay those fees and costs is the party that imposed the obligation to arbitrate disputes.

*Id.* Although SB 707 is not yet in effect, the Court can and should take note that curbing behavior like that CoreLogic displayed here is a legislative priority in California.

For all of these reasons, the Court should sanction CoreLogic and/or its counsel in the amount of Plaintiffs' attorneys' fees and costs spent opposing CoreLogic's motion to compel and litigating the arbitrations at issue. *See McLellan*, 2018 WL 3549042, at *7 (ordering plaintiff to submit a request for reasonable attorneys' fees and costs within 14 days). The Court should also order that CoreLogic file a copy of the Court's sanctions order in all cases in which it seeks to

-18-

compel arbitration with its employees. *See id.* The Court can and should also hold

CoreLogic and / or its counsel in civil contempt of its orders and admonish

CoreLogic that further disobedience to the orders of this Court will warrant

additional sanctions. Plaintiffs respectfully request leave to submit their fees and

costs within 14 days of the Court ruling on this motion.

**IV.     CONCLUSION**

For these reasons, Plaintiffs request that the Court find that CoreLogic

defaulted in the 110 arbitrations on which it failed to pay, that the Court resume

jurisdiction over Plaintiffs' claims on that basis, and that the Court sanction

CoreLogic and/or its counsel in the amount of Plaintiffs' fees and costs incurred

opposing CoreLogic's motion to compel and then litigating the arbitrations on

which CoreLogic defaulted.

DATED: October 21, 2019          NICHOLS KASTER, LLP

By: */s/ Matthew C. Helland*
Matthew C. Helland

BRYAN SCHWARTZ LAW

*Attorneys for Plaintiffs and Putative Class and
Collective Action Members*

PLAINTIFFS' MEM. SUPP. MOT. FOR DEFAULT, JURISDICTION AND SANCTIONS