# EXHIBIT 8



Sacramento • San Francisco • Los Angeles • Orange County • San Diego

COUNSEL TO CALIFORNIA EMPLOYERS℠

18300 Von Karman Avenue, Suite 800
Irvine, California 92612

T: 949.622.1661

Sender's e-mail:
awilliams@cdflaborlaw.com

August 27, 2019

**VIA E-MAIL (Heathersanto@adr.org)**

Heather Santo
American Arbitration Association
1301 Atwood Ave., Ste. 211N
Johnston, RI 02919

   Re: <u>Individual Claimants v. CoreLogic Valuation Solutions, Inc.</u>

Dear Ms. Santo:

  This shall serve as CoreLogic Valuation Solutions, Inc.'s brief regarding threshold issues. CoreLogic requested that a special master be appointed to determine these threshold issues. Plaintiffs denied that request. Accordingly, CoreLogic requests that these threshold issues be determined by the AAA Administrative Review Council before the commencement of any individual arbitration proceeding. Should the AAA refuse to determine these threshold issues before the commencement of any individual arbitration proceeding, CoreLogic and its counsel will suffer irreparable harm in being required to participate and fund arbitration proceedings that were initiated in violation of the regulations governing the unauthorized practice of law and without consent of the purported arbitrant.

## I. SUMMARY OF THRESHOLD ISSUES

  CoreLogic identifies the following threshold issues that must be resolved before the commencement of any individual arbitration proceeding.

1. The FLSA provides that "No employee shall be a party plaintiff to any [FLSA] action unless he gives his consent in writing to become such a party and such consent is filed with the court [or arbitration] in which such action is brought." 29 U.S.C. § 216(b). The issue is whether the "consents" submitted in connection with the demands for arbitration authorized the initiation of individual arbitration proceedings and representation by Bryan Schwartz Law or Nichols Kaster in those proceedings; and
2. Whether Nichols Kaster and Bryan Schwartz Law should be enjoined from representing some or all of the purported arbitrants where:
    a. Nichols Kaster and Bryan Schwartz Law engaged in the unauthorized practice of law in violation of Model Rule of Professional Conduct, Rule 5.5, when they

Carothers DiSante & Freudenberger LLP

Heather Santo
August 27, 2019
Page 2

    solicited former opt-in members to initiate individual arbitration proceedings in twenty-five (25) states in which they are not admitted to practice; and

  b. Nichols Kaster and Bryan Schwartz Law are presently engaged in the unauthorized practice of law in violation of Model Rule of Professional Conduct, Rule 5.5, allowing for an out-of-state attorney <u>only</u> to "provide legal services on a <u>temporary basis</u>"…"in or reasonably related to a pending or potential arbitration, mediation, or other alternative resolution proceeding in this or another jurisdiction, <u>if the services arise out of or are reasonably related to the lawyer's practice in a jurisdiction in which the lawyer is admitted to practice</u>" based upon their initiation of 104 individual arbitration proceedings in twenty-five (25) states in which they are not admitted to practice and on whose behalf they did not have an attorney-client relationship at the time they purported to initiate such proceedings.

## II. PROCEDURAL HISTORY

On December 29, 2017, Plaintiff Harriet Mitchell, through her counsel, Bryan Schwartz Law, LLP, commenced a putative California class and FLSA collective action in the United States District Court, Central District, Case No. 8:17-cv-02274-DOC-DFMx on behalf of herself and other staff appraisers employed by CoreLogic in California and throughout the United States.

  1. **The Court Conditionally Certifies An FLSA Collective Action And Orders Notice To Putative Collective Action Members**

On January 7, 2019, the Court conditionally certified an FLSA collective action and authorized notice and a 90-day opt-in period. The substance of the notice provided in relevant part as follows (emphasis added):

> The purpose of this Notice is to inform you of a ***pending collective action lawsuit (the "Lawsuit"*)** brought against CoreLogic, claiming violations of the Fair Labor Standards Act ("FLSA"). This Notice will inform you of the procedure for ***participating in this suit***.
>
> …
>
> To be eligible to join the Lawsuit…
>
> ***By completing the enclosed Consent Form, you will be designating Plaintiffs and their attorneys to act on your behalf and to represent your interests with respect to your claims under the FLSA in this lawsuit***…***Bryan Schwartz Law***

1513498.1

Carothers DiSante & Freudenberger LLP

Heather Santo
August 27, 2019
Page 3

### 2. The Court Grants CoreLogic's Motion To Compel Arbitration

On February 12, 2019, CoreLogic moved to compel arbitration with regard to all collective action opt-in members, putative collective action members, and putative class action members who had executed an Employment Application or Separation Agreement that required the arbitration of disputes pursuant to the Employment Rules of the American Arbitration Association. The Court granted that motion on April 9, 2019.

### 3. Bryan Schwartz Law And Nichols Kaster Solicit Former Opt-In Members To Initiate Individual Arbitration Proceedings And File Demands For Arbitration Of FLSA Claims Using The Consent Forms Authorizing Participation In The District Court Action — Not The Initiation Of Individual Arbitration Proceedings Or Representation By Nichols Kaster

On April 24, 2019, Bryan Schwartz Law and Nichols Kaster, LLP began filing with the AAA demands for arbitration throughout the United States on behalf of former collective action opt-in members. At the time Nichols Kaster began filing these demands for arbitration, they had not appeared in the *Mitchell* action, having first filed a notice of appearance for "plaintiffs" on April 26, 2019.

The demands for arbitration asserted an FLSA overtime claim. Bryan Schwartz Law and Nichols Kaster expressly relied upon the "consent" filed in the *Mitchell* action as the purported authorization and consent to the filing of the demand. The "consent" did not authorize the initiation of individual arbitration proceedings, but rather expressed consent only to participate in the *Mitchell* action, and did not contain any consent or authorization to representation by Nichols Kaster.

### 4. CoreLogic Objects And Nichols Kaster And Bryan Schwartz Law Begin Filing "Updated" Consents That Still Fail To Provide Proper Authorization

Apparently conceding that they did not have the authority and consent to initiate individual arbitration proceedings at the time they were purportedly initiated, Nichols Kaster and Bryan Schwartz Law began obtaining and filing "updated consents." As explained below, these *ad hoc* consents do not authorize the initiation of individual arbitration proceedings, and further do not authorize the initiation of individual arbitration proceedings for the recovery of overtime based on "off-the-clock work in order to complete work on-time" as alleged in the demands.

1513498.1

Carothers DiSante & Freudenberger LLP

Heather Santo
August 27, 2019
Page 4

  5. **Nichols Kaster And Bryan Schwartz Law Purport To Initiate 149 Individual Arbitration Proceedings In 27 Different States, Including 104 Arbitration Proceedings In 25 States In Which They Are Not Admitted To Practice Law**

  To date, Nichols Kaster and Bryan Schwartz Law have purported to initiate 149 individual arbitration proceedings in 27 different states. Collectively, however, named counsel, Bryan Schwartz, Rachel Terp, Daniel Brome and Matthew Helland are admitted to practice <u>only</u> in California, with Matthew Helland additionally admitted to practice in Minnesota. Thus, 104 of the arbitration demands were filed in 25 states in which neither Bryan Schwartz Law nor Nichols Kaster and their attorneys are authorized to practice.

  III. **NICHOLS KASTER ND BRYAN SCHWARTZ LAW INITIATED INDIVIDUAL ARBITRATION PROCEEDINGS WITHOUT CONSENT**

  "No employee shall be a party plaintiff to any [FLSA] action unless he gives his consent in writing to become such a party and such consent is filed with the court [or arbitration] in which such action is brought." 29 U.S.C. § 216(b). Here, Bryan Schwartz Law and Nichols Kaster attempted to initiate individual arbitration proceedings for FLSA claims based on consents obtained and filed in the *Mitchell* action. When CoreLogic objected to those consents, Counsel scrambled to obtain "updated consents" on behalf of those individuals for whom Counsel had already attempted to initiate individual arbitration proceedings. The original and updated consents fail to authorize the initiation of these individual arbitration proceedings. In the absence of such authorization and consent, the arbitrations cannot proceed.

  A. **The *Mitchell* Consents Did Not Authorize The Initiation Of Individual Arbitration Proceedings Or Representation By Bryan Schwartz Law Or Nichols Kaster In Those Proceedings**

  As explained above, on April 9, 2019, all *Mitchell* opt-in members who had previously consented to join the *Mitchell* action and agreed to be represented by Bryan Schwartz Law in that action were compelled to arbitrate their claims on an individual basis, should they choose to do so. Accordingly, Bryan Schwartz Law's representation of these *former* opt-in members ceased once the motion to compel arbitration was granted because these individuals were no longer members of the conditionally certified class. *See In re Chicago Flood Litig*., 289 Ill. App. 3d 937, 943-44 (1997) (no attorney-client relationship between class counsel and former class members in certified class action); *Kleiner v. First Nat. Bank of Atlanta*, 102 F.R.D. 754, 769 (N.D. Ga. 1983) aff'd in part, vacated in part, 751 F.2d 1193 (11th Cir. 1985) (class counsel does not represent individuals in certified class action until it is determined that they are going to participate in the class action); *In re Potash Antitrust Litigation*, 162 F.R.D. 559, 562 fn. 3 (whether an attorney-client relationship will materialize will depend upon a putative class member's decision to accept or reject class standing); *Janik v. Rudy, Excelrod & Zieff*, 119

1513498.1

Carothers DiSante & Freudenberger LLP

Heather Santo
August 27, 2019
Page 5

Cal.App.4th 930 (citing *Kleiner*); *Tedesco v. Mishkin*, 629 F. Supp. 1474, 1483 (S.D.N.Y. 1986) (citing *Kleiner*).

Notwithstanding, a few weeks later, Bryan Schwartz Law and Nichols Kaster began filing demands for arbitration on behalf of these former opt-in members. These demands relied exclusively on the consent to join the *Mitchell* action. However, the *Mitchell* consent did not authorize the initiation of individual arbitration proceedings or representation by Bryan Schwartz Law or Nichols Kaster in those proceedings. In the absence of proper consent, the arbitrations cannot proceed.

For example, in *Albritton v. Cagle's, Inc.*, 508 F.3d 1012, 1016 (11th Cir. 2007), like here, class counsel sought to initiate lawsuits based on consents filed in a different action. The district court dismissed these lawsuits for failure to comply with the consent requirement of the FLSA, and the Eleventh Circuit affirmed, finding that,

> "[u]pon the filing of the [original] consent forms Plaintiff manifested his/her intent to join [the original case], and no other case.... It is therefore found that the consent forms at issue are limited to counsel's representation of Plaintiffs in [the original case] and are not freely transferable to [the subsequent] or any other case." *Id*. at 1017-18.

The Court's analysis was based on the well settled principle that "we must interpret consent forms according to the plain meaning of their language." *Albritton v. Cagle's, Inc.*, 508 F.3d 1012, 1018 (11th Cir. 2007). There, the notice and consents "clearly and specifically invited said persons to join as party plaintiffs in [that lawsuit], and not in this or any other new or additional suit which might be brought or filed." *Id*. at 1017. Further, "neither the notices nor the blank consent forms suggested or otherwise inferred that counsel's representation of said persons, should they choose to join [that lawsuit], existed beyond the limited confines of that lawsuit." *Id*. at 1017-18.

Here, the notice and consent expressly invited persons to "participate" in "a pending collective action lawsuit (the "Lawsuit")," to "join the Lawsuit" to "opt in to a federal collective action conditionally certified by the Court." They did not suggest, let alone authorize, the initiation of individual arbitration proceedings. See Melendez Citron v. Hershey P.R. Inc., 363 F.Supp.2d 10, 16 (DRP 2005) (a consent form "must clearly manifest the individual's consent to become a party to the litigation"). Likewise, the notice and consent authorized Bryan Schwartz Law, as "Plaintiffs' attorneys" to represent their interests in "this lawsuit." It did not extend to representation in individual arbitration proceedings and certainly did not extend to representation by Nichols Kaster in those proceedings. (Williams Decl. ¶ 4; Exh. C.) *See In re Chicago Flood Litig.*, 289 Ill.App.3d 937, 943-44 (1997) (no attorney-client relationship between class counsel and *former class members* in certified class action).

1513498.1

Carothers DiSante & Freudenberger LLP

Heather Santo
August 27, 2019
Page 6

### B. The Updated Consents

When CoreLogic objected to these consents, Bryan Schwartz Law and Nichols Kaster immediately began attempting to secure "updated consents" from persons on whose behalf they had already attempted to initiate individual arbitration proceedings. These updated consents, like the ones relied upon in the Mitchell action, are fatally flawed.

The updated consents were executed *after* counsel purported to initiate the subject arbitration proceedings. (Williams Decl. ¶ 8; Exh. F.) "An action may not proceed as to any person until a formal written consent from that person is filed in court" or arbitration as the case may be. *Albritton*, 508 F.3d at 1016. Furthermore, "[a]n attorney may not file lawsuits without the authorization of the Plaintiffs on whose behalf the lawsuit is purportedly filed." *Id.*; *see also* Cal. Bus. and Prof. Code §6104 ("Corruptly or willfully and without authority appearing as attorney for a party to an action or proceeding constitutes a cause for disbarment or suspension.") This includes initiating an action in court or in arbitration. *See In the Matter of Taylor (Review Dept. 1991) 1 Cal. State Bar Ct. Rptr. 563, 577.*

In addition, the updated consent provides that "I understand that my claim was previously asserted in Court and is now being asserted in individual arbitration." The updated consent does not authorize the initiation of arbitration proceedings in the first instance, but simply acknowledges that such proceedings are ongoing.

In any event, there are still 2 purported arbitrants for whom updated consents have not been obtained or submitted, and others were submitted several weeks after counsel purportedly initiated arbitration, further evidencing complete and total lack of consent at the time the arbitration demands were filed. *In re Food Lion*, 1998 WL 322682, at *13 (4th Cir. June 4, 1998) ("Until a plaintiff, even a named plaintiff, has filed a written consent, she has not joined in the class action, at least for statute of limitations purposes.")

### IV. NICHOLS KASTER AND BRYAN SCHWARTZ LAW ENGAGED IN AND ARE CONTINUING TO ENGAGE IN THE UNAUTHORIZED PRACTICE OF LAW

### A. Nichols Kaster And Bryan Schwartz Law Solicited *Former* Opt-In Members To Initiate Individual Arbitration Proceedings In States In Which They Are Not Admitted To Practice

Nichols Kaster and Bryan Schwartz Law engaged in the unauthorized practice of law by soliciting *former* opt-in members to initiate individual arbitration proceedings before establishing an attorney-client relationship and in states in which they are not admitted to practice.

1513498.1

Carothers DiSante & Freudenberger LLP

Heather Santo
August 27, 2019
Page 7

As explained above, Bryan Schwartz Law's attorney-client relationship with former opt-in members ceased upon entry of the order compelling arbitration. Thus, before Bryan Schwartz Law (and Nichols Kaster) could initiate an arbitration on their behalf, they were required to establish an attorney-client relationship and make various disclosures, including disclosing that they were not admitted to practice law in the state in which they intended to initiate an individual arbitration proceeding. There is absolutely no evidence that suggests that they did so. Such conduct constitutes the unauthorized practice of law. *See In the Matter Of Marilyn Sue Scheer*, 2014 W.L. 1217969 (2014) (Scheer engaged in "unlawful solicitation" where she solicited 28 clients in 12 states where she was unlicensed to practice law in connection with her representation of these clients in loan modification cases. Scheer violated Rule 5.5 and the law in each of the jurisdictions in which she was unlicensed to practice, including in Ohio, Oregon, Virginia, Massachusetts, Pennsylvania, and New Hampshire, as she entered written fee agreements to provide legal services in a jurisdiction where she was unlicensed to practice law and failed to expressly disclose to the client that she was not licensed to practice in their state.); *The Florida Bar v. Kaiser*, 397 So.2d 1132, 1133 (1981) (holding that attorney engaged in the unauthorized practice of law where he "was responsible for advertisements suggesting he is a Florida attorney, with no distinguishing limitations as to his membership in the New York bar or his limited area of practice." Attorneys' conduct unlawful because it "would tend to mislead the public into believing that he was a member of The Florida Bar or authorized to practice in the state."); *Attorney Grievance Com'n of Md. v. Ambe*, 38 A.3d 390, 399 (2012) (out-of-state attorney held himself out as authorized to practice by failing to indicate that he was not licensed to practice in Maryland); *In re Pius Airewele* (2012) 2012 WL 3990105 (attorney violated Massachusetts' professional rules of conduct by failing to disclose he was not admitted to practice in Georgia).

**B.** **Nichols Kaster And Bryan Schwartz Law Are *Not* Providing Legal Services On A Temporary Basis**

Bryan Schwartz Law and Nichols Kaster are also in violation of the Model Rules of Professional Conduct, Rule 5.5(c)(3), which provides, in relevant part as follows:

> "(c) A lawyer admitted in another United States jurisdiction, and not disbarred or suspended from practice in any jurisdiction, may provide legal services on a temporary basis in this jurisdiction that:…(3) are in or reasonably related to a pending or potential arbitration, mediation, or other alternative resolution proceeding in this or another jurisdiction, if the services arise out of or are reasonably related to the lawyer's practice in a jurisdiction in which the lawyer is admitted to practice and are not services for which the forum requires pro hac vice admission."

1513498.1

Carothers DiSante & Freudenberger LLP

Nichols Kaster and Bryan Schwartz Law have purported to initiate 104 individual arbitration proceedings in 25 states in which none of the named counsel are authorized to practice. These states have adopted the Model Rule 5.5 (except as otherwise stated below). Thus, Nichols Kaster and Bryan Schwartz Law may only provide legal services on a ***temporary basis*** in this jurisdiction that are in or reasonably related to a pending or potential arbitration, mediation, or other alternative resolution proceeding in this or another jurisdiction, ***if the services arise out of or are reasonably related to the lawyer's practice in a jurisdiction in which the lawyer is admitted to practice*** and are not services for which the forum requires pro hac vice admission.

There is no single test or standard governing whether a lawyer's legal services are provided on a "temporary basis." Courts and state ethics opinions typically express a lawyer's temporary presence in another jurisdiction as "incidental," "limited," "isolated," "attenuated," or ""occasional," while describing a lawyer's systematic and continuous presence as "regular," "repetitive," "frequent," "substantial," or "permanent." *See, e.g., In re Lerner*, 197 P.3d 1067, 1075 (Nev. 2008) (contrasting a lawyer's "incidental" or "isolated" presence to "a regular or repetitive course of business"); N.J. Eth. Op. 49, 2012 WL 12303775, at *4 (N.J. Sup. Ct., Advisory Comm. on Prof'l Ethics 2012) (interpreting ""occasional" to mean "occurring infrequently or from time to time"); Va. Sup. Ct. R. pt. 6, sec. II, 5.5 n.6 (explaining that "temporary" refers to the duration of a lawyer's presence and provision of legal services, while ""occasional" refers to the frequency with which a lawyer comes to Virginia to provide legal services); Restatement (Third) of the Law Governing Lawyers § 3 cmt. e (2000) (stating that a lawyer may not "engage in the continuous, regular, or repeated representation of clients" in a non-admitted jurisdiction).

Bryan Schwartz Law and Nichols Kaster's initiation of 104 arbitration proceedings in 25 states in which they are not admitted to practice is far from "incidental," "limited" "isolated" or "attenuated." *See, e.g.*, 2009 Amended Rules for Admission to the State Bar of Montana, Supreme Court of the State of Montana, Order 00-329, Rule VI, Pro Hac Vice, Rules Governing Admission to the Alabama State Bar, Rule VII, *Admission of Foreign Attorneys Pro Hac Vice* and Nevada Supreme Court Rules, Rule 42 (6) (a), (b) (limiting the number of *pro hac vice* admissions to law firms, as well as their individual attorneys.)

C. **Nichols Kaster Had No Relationship With The Arbitrants — They Are Not Providing Services That Arise Out Of Or Are Reasonably Related To The Lawyer's Practice In A Jurisdiction In Which The Lawyer Is Admitted To Practice**

In addition to the foregoing, counsel may only provide legal services if the services arise out of or are reasonably related to the lawyer's practice in a jurisdiction in which the lawyer is admitted to practice. Model Rule 5.5(c)(3). When properly utilized, this provision allows lawyers to follow clients to other jurisdictions to perform legal work. But, like the other

Carothers DiSante & Freudenberger LLP

Heather Santo
August 27, 2019
Page 9

temporary safe harbors, the ADR exception will not protect lawyers who find themselves repeatedly conducting arbitrations in an unlicensed jurisdiction. *See* Ronald D. Rotunda & John S. Dzienkowski, Legal Ethics: The Lawyer's Deskbook on Professional Responsibility § 5.5-2, at 1125 (2017-2018); *see also* Phila. Eth. Op. 03-13, 2003 WL 22855548, at *2 (Phila Bar Ass'n, Prof'l Guidance Comm. 2003) (observing that a lawyer licensed in another state may participate in an ADR proceeding in Pennsylvania for a longstanding client, but cautioning that "participation in multiple [ADR] proceedings could constitute [UPL]"); Illinois LEO 94-5 (7/1994) ("Regular representation of Illinois parties to arbitration proceedings by lawyer not licensed in Illinois constitutes unauthorized practice of law.")

Nichols Kaster had no prior relationship with the arbitrants on whose behalf they filed demands for arbitration. Accordingly, they cannot claim compliance with Rule 5.5(c)(3).

### D. Nichols Kaster And Bryan Schwartz Law Are In Violation Of State Specific Regulations

Several states in which Nichols Kaster and Bryan Schwartz Law have attempted to initiate individual arbitration proceedings impose restrictions and requirements beyond those articulated in the Model Rules of Professional Conduct.

#### a. Florida State Bar Rule 1-3.11

Nichols Kaster and Bryan Schwartz Law have attempted to initiate 25 individual arbitration proceedings in Florida. This conduct violates Florida State Bar Rule 1-3.11, which counsel have knowingly attempted to circumvent.

##### (i) Counsel Have Failed To Serve The Required Verified Statement

In Florida, a lawyer who is not admitted to practice in Florida may appear in an arbitration proceeding in Florida for a client who resides in Florida or where the appearance arises out of or is reasonably related to the lawyer's practice in the jurisdiction in which the lawyer is admitted to practice, and the appearance is not one that requires pro hac vice admission. Rule 1-3.11(a). "In all arbitration proceedings, except international arbitrations, *prior to practicing* pursuant to this rule, the non-Florida lawyer *must file a verified statement with The Florida State Bar and serve a copy of the verified statement on opposing counsel*. The verified statement must include a statement:

(1) identifying all jurisdictions in which the lawyer is currently eligible to practice law including the attorney's bar number(s) or attorney number(s);

1513498.1

Carothers DiSante & Freudenberger LLP

Heather Santo
August 27, 2019
Page 10

     (2) a statement identifying by date, case name, and case number all other arbitration proceedings in which the non-Florida lawyer has appeared in Florida in the preceding 5 years…; (3) a statement identifying all jurisdictions in which the lawyer has been disciplined in any manner in the preceding 5 years and the sanction imposed, or in which the lawyer has pending any disciplinary proceeding, including the date of the disciplinary action and the nature of the violation, as appropriate; (4) a statement identifying the date on which the legal representation at issue commenced and the party or parties represented…; (5) a statement that all applicable provisions of this rule have been read and that the verified statement complies with this rule; (6) a certificate indicating service of the verified statement upon all counsel of record in the matter and upon The Florida Bar at its Tallahassee office accompanied by a nonrefundable $250.00 filing fee made payable to The Florida Bar; and (7) a verification by the lawyer seeking to appear pursuant to this rule."

     *After* counsel filed demands for arbitration, and *after* CoreLogic raised counsel's non-compliance with Rule 1-3.11, counsel served the required statements with regard to some of the Florida arbitrations. CoreLogic is not aware of the filing of any such verified statements by Bryan Schwartz Law or any of its attorneys.

     **(ii)    Counsel Carefully Crafted The Florida Demands So That Only One Attorney Appears As Counsel Of Record So As To Circumvent The Regulations Concerning "General Practice"**

     Significantly, Rule 1-3.11 further provides that "non-Florida lawyers shall not be permitted to engage in a general practice pursuant to this rule. In all arbitration matters except international arbitration, "*a lawyer who is not admitted to practice law in this jurisdiction who files more than 3 demands for arbitration or responses to arbitration in separate arbitration proceedings in a 365-day period shall be presumed to be engaged in a "general practice*."" In nearly each and every one of the demands for arbitration, with the exception of Florida, counsel identified both Bryan Schwartz Law and Nichols Kaster as counsel of record for the claimant.

     In an attempt to circumvent Rule 1-3.11, counsel identified another seven attorneys to front their names on these Florida demands, even though none of these individuals are admitted to practice in Florida.

     **b.    Michigan Court Rules, Rule 8.126**

     Counsel have attempted to initiate 3 individual arbitration proceedings in Michigan in violation of Michigan Court Rules, Rule 8.126, by failing to associate Michigan counsel and by failing to file a motion and obtain an order from the Michigan State Bar authorizing "temporary admission" to appear in an arbitration proceeding.

1513498.1

Carothers DiSante & Freudenberger LLP

Heather Santo
August 27, 2019
Page 11

Rule 8.126 provides, in relevant part, that "[a]ny person who is licensed to practice law in another state…may be permitted to appear…*in a specific arbitration proceeding in this state when associated with and on motion of an active member of the State Bar of Michigan who appears of record in the case*. An out-of-state attorney may be temporarily admitted to practice under this rule in no more than five cases in a 365-day period. Permission to appear and practice is within the discretion of the court, administrative tribunal or agency, or arbitrator and may be revoked at any time for misconduct."

The procedure for obtaining temporary admission requires that the Michigan attorney with whom the out of state lawyer associates file a motion that seeks permission for the temporary admission of the attorney, provide a certificate of good standing, demonstrate payment of the required fee to the State Bar of Michigan, and provide an affidavit of the out-of-state attorney. Within seven days after receipt of the copy of the motion and fee, the State Bar of Michigan notifies the attorneys whether the out-of-state attorney has been granted permission to appear temporarily in Michigan within the past 365 days, and, if so, the number of such appearances. "*No order or other writing granting permission to appear in a case shall be entered by a court, administrative tribunal or agency, or arbitrator until the electronic notification is received from the State Bar of Michigan*." Following notification by the State Bar of Michigan, if the out-of-state attorney has been granted permission to appear temporarily in fewer than 5 cases within the past 365 days, the court may enter an order granting permission to the out-of-state attorney to appear temporarily in a case.

Here, Counsel have failed to do any of the foregoing.

### c.     Virginia Rules Of Profession Conduct, Rule 5.5

Counsel have attempted to initiate 3 individual arbitration proceedings in Virginia in violation of Virginia Rules of Professional Conduct, Rule 5.5, which provides that before providing any legal services, "(d)(3) A Foreign Lawyer shall inform the client and interested third parties in writing: (i) that the lawyer is not admitted to practice law in Virginia; (ii) the jurisdiction(s) in which the lawyer is licensed to practice; and (iii) the lawyer's office address in the foreign jurisdiction."

CoreLogic is not aware of any such disclosures having been made before attempting to initiate the subject arbitration proceedings.

Carothers DiSante & Freudenberger LLP

Heather Santo
August 27, 2019
Page 12

### V. THE AAA MUST REFUSE TO ADMINISTER INDIVIDUAL ARBITRATION PROCEEDINGS INITIATED WITHOUT CONSENT AND IN VIOLATION OF THE RULES GOVERNING THE UNAUTHORIZED PRACTICE OF LAW

The AAA previously determined that arbitrants had satisfied the filing requirements because they had submitted a demand for arbitration and had paid the filing fee. However, in light of the foregoing, administering these arbitrations any further contravenes the preconditions to initiation of an FLSA claim and would effectively aid and abet the unauthorized practice of law. These threshold issues must be determined before the commencement of any arbitration proceeding.

Sincerely,

ss/Amy Williams

Amy S. Williams
CAROTHERS DiSANTE & FREUDENBERGER LLP

cc:   Matthew C. Helland, Nichols Kaster LLP
      Bryan Schwartz, Bryan Schwartz Law

1513498.1