# EXHIBIT 9



Matthew C. Helland          235 Montgomery Street
Direct: (415) 277-7239       Suite 810
Fax: (415) 277-7238          San Francisco, CA 94104
helland@nka.com             (877) 777-0622

September 3, 2019

**SENT VIA EMAIL ONLY**
Tacy Zysk
Heather Santo
American Arbitration Association
1301 Atwood Ave, Suite 211N
Johnston, RI 02919
TacyZysk@adr.org
heathersanto@adr.org

Re:     CoreLogic Arbitrations

Dear Ms. Zysk:

Claimants began filing demands for individual arbitration over four months ago, after CoreLogic obtained a court order forcing them to do so. Over the course of that four months CoreLogic has engaged in delay tactic after delay tactic, taking all possible steps to avoid adjudication of Claimants' claims in the forum CoreLogic selected. CoreLogic's recent letter regarding "threshold issues" is just the latest delay tactic. The AAA should reject CoreLogic's request for further delay and leave these issues to individual arbitrators for resolution.

CoreLogic's letter addresses two issues, neither of which are appropriate for administrative review. First, CoreLogic complains that Claimants' consent forms are insufficient. But CoreLogic already raised this issue to AAA in May, and AAA determined that the issue was for arbitrators to resolve because Claimants had met their filing requirements. Second, CoreLogic alleges that Claimants' Counsel is engaged in the unauthorized practice of law. But Rule 5.5(c) of the Model Rules of Professional Conduct specifically contemplates out-of-state-counsel representing clients in arbitrations such as these. Counsel's representation of Claimants comports with Model Rule 5.5(c) and all state variations thereof, like Florida, which impose more stringent requirements. Claimants respectfully request that the AAA swiftly reject CoreLogic's latest delay tactic and proceed with administration of these arbitrations.

### AAA Has Already Referred CoreLogic's Consent Form Challenge to Individual Arbitrators

CoreLogic first raised threshold issues to the AAA by letter dated May 9, 2019. (Exh. 1.) In that letter, CoreLogic argued Claimants' consent forms were insufficient under 29 U.S.C. § 216(b). Claimants' Counsel responded the same day, pointing out that CoreLogic previously argued for an expansive delegation clause and that all issues relating to these arbitrations,

including questions of arbitrability, must be resolved by individual arbitrators. (*See* Exh. 2.) Accordingly, Claimants argued, CoreLogic's challenge to Claimants' consent forms may only be resolved by individual arbitrators and not through an administrative ruling.[1]

The AAA Agreed. By letter dated May 13, 2019, the AAA "made an administrative determination that Claimants have met the filing requirements by filing demands for arbitration providing for administration by the AAA under its Rules and/or a Court Order." (Exh. 3.) The AAA noted that "[t]he parties' contentions have been made part of the files and will be forwarded to the arbitrators upon appointment, at which time the parties may submit their arbitrability arguments to the arbitrators for determination." (*Id.*)

CoreLogic's most recent letter advances no argument why AAA should reverse its decision now. Accordingly, Claimants respectfully request that the AAA abide by its previous decision on CoreLogic's challenge to Claimants' consent forms and reserve the issue for determination by individual arbitrators.[2]

## AAA's Administrative Body is Without Jurisdiction to Resolve CoreLogic's Interpretation of Several States' Rules of Professional Responsibility

CoreLogic also asks AAA's Administrative Review Council (the "ARC") to determine that Claimants' Counsel is engaged in the unauthorized practice of law. The AAA should reject that request because the ARC is without jurisdiction to make this determination.

As you know, the ARC exists to "resolve arbitrator objections, locale determinations, and whether the filing requirements contained in the AAA's Rules have been met." (AAA Administrative Review Council Guidelines.) "The AAA is not authorized to make arbitrability determinations, however the ARC will review disputes about whether a matter has been properly

---

[1] Claimants reincorporate their previous arguments by reference.

[2] Although the issue is not ripe for resolution, it bears noting that consent forms are not even required in individual FLSA cases such as these. Section 216(b) specifically discusses the requirement for written consent for actions brought "by any one or more employees . . . in *behalf of himself or themselves and other employees similarly situated*." Each arbitration will be an individual proceeding, such that the written consent requirement does not apply. *See Int'l Bhd. of Carpenters and Joiners of Am., AFL-CIO, Local Union No. 217 v. G.E. Chen Constr.*, 136 F. App'x 36, 38 (9th Cir. 2005) ("[p]laintiffs sued as individuals on their own behalf. Title 29 U.S.C. § 216(b) requires written consent to be filed where the action is also on behalf of 'other employees similarly situated.' Because this action was not brought on behalf of 'other employees similarly situated,' written consent filings were not required"); *Wallace v. Water Tank Serv. Co.*, 256 F. Supp. 689, 690 (W.D. Okla. Aug. 15, 1966) ("this is an individual action, not a class or collective action . . . the Plaintiff is not required to file a consent herein under 29 U.S.C. § 216(b)"); *Morelock v. NCR Corp.*, 586 F.2d 1096, 1103 (6th Cir. 1978) ("The consent requirement of [section] 216(b) . . . is apposite solely to representative actions . . . Individual relief is sought for each of the plaintiffs. No plaintiff purports to represent anyone other than himself. As this is not a representative suit, there was no need for plaintiffs to have filed consents in writing"); *McNair v. Waste Mgmt. of Fla.*, 1991 WL 43023, at *3 (N.D. Fla. Mar. 25, 1991) ("[t]he concept of requiring an individual plaintiff to 'consent' to bring suit, when that plaintiff is the only individual bringing suit, is an anomaly").

filed with the AAA. The ARC may determine that the AAA will proceed to administer an arbitration, with the direction that the parties may present their jurisdictional or arbitrability dispute to the arbitrator once appointed." (*Id.*)

CoreLogic cites no authority giving the ARC jurisdiction over its challenge to Counsel's representation of Claimants in these arbitrations. To the extent that the issue is one of arbitrability or is otherwise related to Claimants' claims, it can only be resolved by an appointed arbitrator.[3] CoreLogic's broad delegation clause and the AAA's ARC rules prevent groupwide administrative adjudication of this issue. Moreover, CoreLogic has argued that all issues must be adjudicated on an individual, and not group basis. Claimants therefore have a contractual right to individual adjudication of this, and all other, issues.

### CoreLogic's Ethical Challenge Fails Because The Rules of Professional Conduct Expressly Permit Counsel's Representation in these Cases

Even if it were properly before the ARC, CoreLogic's challenge to Claimants' Counsel's filings are meritless. First, Counsel are licensed in California and of course may file arbitrations there. CoreLogic therefore has no basis to challenge the California filings. For the rest of the filings, Model Rule 5.5(c) expressly permits representation in arbitration by out-of-state attorneys in cases like this one. And the three state-specific challenges CoreLogic raises all fail—Counsel has complied with Florida's filing requirements, Michigan does not require *pro hac vice* admission for arbitration unless it is court-annexed, and CoreLogic has no basis to challenge Counsel's privileged disclosures to its Virginia clients.

### *Claimants' Counsel are Licensed in California*

There is no dispute that 44 arbitrations are filed in California,[4] where Claimants' Counsel are all licensed. CoreLogic advances no challenge to Counsel's representation of these Claimants. Their claims should proceed promptly.

### *Counsels' Representation Comports with Model Rule 5.5(c)*

For those Claimants filed outside of California, the arbitrations should proceed because relevant rules of professional conduct specifically authorize representation in arbitration by out-of-state counsel. Specifically, Model Rule 5.5(c) permits counsel to provide legal services on a temporary basis that "are in or reasonably related to a pending or potential arbitration, mediation, or other alternative resolution proceeding in this or another jurisdiction, if the services arise out of or are reasonably related to the lawyer's practice in a jurisdiction in which the lawyer is admitted to practice and are not services for which the forum requires pro hac vice admission." MRPC 5.5.

Model Rule 5.5(c) exists for situations like this, to allow individuals to use counsel of their choosing to arbitrate in states where counsel is not licensed. Although there is no test governing whether an attorney is practicing on temporary basis, the comments to Model Rule 5.5 contemplate services performed "on a recurring basis or for an extended period of time, as when

---

[3] To the extent the issue exists outside the parties' disputes and relates only to Claimants' Counsel's ethical obligations, the AAA has no contractual jurisdiction over the issue at all.

[4] The numbers provided in this letter are as of the start of the day on September 3, 2019.

the lawyer is representing a client in a single lengthy negotiation or litigation." That is precisely the case here.

Nichols Kaster and Bryan Schwartz Law represent Claimants in arbitrations that are all against the same employer, and the employer happens to be present throughout the United States. While this action began as a class and collective action where the litigation would be concentrated in California, CoreLogic compelled arbitration and spread these actions across the United States. Nichols Kaster and Bryan Schwartz Law's presence is these states was not systemic and continuous, but instead incidental to former class and collective members being compelled out of the initial action and into arbitration. [5]

CoreLogic lumps all non-California arbitrations into one group and argues that Counsel is engaged in the unauthorized practice of law generally by representing clients in these various states. But the issue must be answered on a state-by-state basis, not generally, and the reality is that Claimants are widely disbursed across the country. The number of filings by state is as follows:

| AZ | 6 | GA | 8 | MA | 1 | MO | 3 | NY | 3 | PA | 3 | TX | 5 |
| CA | 44 | IL | 5 | MD | 3 | NC | 4 | OH | 1 | RI | 1 | VA | 3 |
| CO | 2 | KY | 1 | MI | 3 | NJ | 5 | OK | 1 | SC | 3 | WA | 8 |
| FL | 25 | LA | 2 | MN | 1 | NV | 2 | OR | 1 | TN | 4 | | |

So while CoreLogic charges Counsel with engaging in the unauthorized practice of law by filing 104 arbitrations in 25 states, the question is actually whether, for example, the filing of one arbitration in Rhode Island constitutes the unauthorized practice of law in Rhode Island under these circumstances and under Rhode Island's version of Rule 5.5. This is an inherently individualized question that must be answered, if at all, on a state-by-state basis and according to each state's interpretation of its own rules. The ARC may not rule on this issue with a broad brush and as to all states, especially given Claimants' rights to individualized adjudication of

---

[5] Although these arbitrations clearly arose out of previous litigation, Rule 5.5(c)(3) is not so narrow to restrict out-of-state practice to disputes arising out of such litigation. Rule 5.5(c)(3) permits out-of-state lawyers to represents clients in arbitration "if the services arise out of or are reasonably related **to the lawyer's practice** in a jurisdiction in which the lawyer is admitted to practice . . . ." MRPC 5.5(c)(3). The comment notes that the requisite relationship may exist where "the legal issues involve multiple jurisdictions" or when "the services [] draw on the lawyer's recognized expertise developed through the regular practice of law on behalf of clients in matters involving a particular body of federal, nationally-uniform, foreign, or international law." MRPC 5.5, cmt. 14. Both are true here; these cases involve similar issues across multiple jurisdictions, and they involve a federal law (the Fair Labor Standards Act) in which Claimants' Counsel has recognized expertise. *See*, *e.g.*, *Boyd v. Bank of America*, 300 F.R.D. 431 (C.D. Cal. June 27, 2014) (representing appraisers at Respondents' predecessor company); *Harris v. Bank of America*, Case No. 15-cv-07683-VSB (S.D.N.Y.) (same); Exhibit 4 (Nichols Kaster Firm Resume); Exhibit 5 (Schwartz Declaration).

their claims. If this issue is to be resolved in these arbitrations, it must be resolved by individual arbitrators.[6]

## CoreLogic's State-Specific Challenges Fail

CoreLogic's letter address three specific states where the local rules deviate from Model Rule 5.5: Florida, Michigan, and Virginia. Each of these challenges fail.

### *Claimants' Counsel are Not Engaged in "General Practice" in Florida*

Florida's Rules of Professional Conduct delineate the "general practice" of law in Florida arbitrations by limiting lawyers to three arbitration cases in any 365-day period. FL ST BAR Rule 1-3.11. CoreLogic does not dispute that Claimants' Counsel complied with this restriction by limiting each attorney to three arbitrations. Counsels' careful conduct in doing so shows awareness of and the intent to comply with Florida's rules, not an attempt to "circumvent" the rules as CoreLogic alleges.

CoreLogic's principal challenge seems to be with the timing of Counsel's filing of their Verified Statements with the Florida State Bar. Because those statements require disclosure of a file number, it was Counsel's intention to file them after obtaining a case number.[7] Indeed, when Counsel filed a similar statement in Oregon, the agency promptly contacted Counsel asking for the file number, and asked that Counsel wait until obtaining a case number before filing future statements. *See* Exh. 6. At any event, Counsel has now filed Verified Statements with the Florida Bar, even though Respondents' Counsel has not.[8]

CoreLogic outlines the history regarding Counsel's applications in Florida but ultimately alleges no wrong-doing or impropriety. Are lawyers from the same firm prohibited from filing arbitrations in Florida, even when each lawyer stays within the three-case limit? CoreLogic does not argue that they are. Is a lawyer who files a Verified Statement after filing a demand but before obtaining a case number permanently barred from appearing in that case? CoreLogic does not argue for that result.

If anything, Counsel's filings in Florida undermine CoreLogic's arguments regarding Rule 5.5 and the unauthorized practice of law in general. Nichols Kaster filed 18 Verified Statements with the Florida State Bar in May 2019.[9] Nichols Kaster has not received any

---

[6] CoreLogic also argues Rule 5.5 does not apply because Claimants' Counsel's relationship with its clients "ceased" when the district court compelled arbitration and "there is no absolutely no evidence" regarding the substance of Counsel's subsequent communication with its clients. Claimants disagree with the premise that the Court's order compelling arbitration severed the attorney-client relationship, but Counsel's communications with its clients are privileged in any event, and the AAA cannot dismiss Claimants' claims simply because CoreLogic suspects something might be amiss with those communications.

[7] Again, Counsel's intent to comply cannot be seriously in dispute, since Counsel limited each lawyer to three demands.

[8] It appears the Verified Statements for Bryan Schwartz Law were never filed, due to administrative oversight. Bryan Schwartz Law is filing and serving those statements as of the date of this letter.

[9] We will provide copies of these filings to AAA upon request.

5

communication from the Florida Bar questioning these filings, which suggests that Florida sees nothing wrong with them. Simply put, there is no substance to CoreLogic's complaints about Claimants' Florida filings.

### *Counsel Are Not Required to Obtain* **Pro Hac Vice** *Admission in Michigan Because These Cases are not "Court-Annexed Arbitration"*

Section (c)(3) to Rule 5.5 of the Michigan Rules of Professional Conduct tracks the Model Code of Professional Conduct and specifically states that "a lawyer admitted in another jurisdiction and not disbarred or suspended from practice in any jurisdiction may provide temporary legal services that: . . . (3) are in or reasonably related to a pending or potential arbitration, mediation, or other alternative dispute resolution proceeding in this or another jurisdiction, if the services arise out of or are reasonably related to the lawyers practice in a jurisdiction in which the lawyer is admitted to practice and are not services for which the forum requires pro hac vice admission." The Comment to section (c)(3) states that a lawyer *must* obtain *pro hac vice* admission under Michigan Court Rule 8.126 in the case of a court-annexed arbitration. The rules say nothing about *pro hac vice* admission for arbitrations that are not court-annexed.

These arbitrations are not court-annexed arbitrations requiring *pro hac vice* admission. In a court-annexed arbitration, the Court refers a pending action to non-binding arbitration. 1 Alt. Disp. Resol. § 24:22 (4th ed.); *see also* 28 U.S.C. § 654 (discussing the voluntary nature of court-annexed arbitration); *see also CNA Fin. Corp. v. Brown*, 162 F.3d 1334 (11th Cir. 1998) (discussing the procedure of court-annexed arbitration, specifically the power of a district court under 28 U.S.C. § 651(a) to refer civil actions to court annexed arbitration).

Rule 8.126, on which CoreLogic relies, is a Michigan Court Rule. But the Michigan Courts have no jurisdiction over these matters, since CoreLogic has argued that all issues must be heard by an arbitrator. The Michigan arbitrations are instead governed Rule 5.5(c) of the Michigan Rules of Professional Conduct, which permits Counsel's filings. Indeed, if *all* arbitrations in Michigan required *pro hac vice* admission, regardless of whether they were court-annexed, Rule 5.5(c) and its comments would be rendered superfluous.[10] Nevertheless, this is undoubtedly a question for the Arbitrator, and if the Arbitrators in these Michigan arbitrations require *pro hac vice* admission then Counsel will of course comply.

### *CoreLogic's Virginia Challenge is Meritless*

Lastly, CoreLogic challenges Claimants' Virginia filings. CoreLogic is correct that the Virginia rules require certain client disclosures. But CoreLogic is wrong when it argues that AAA must halt these arbitrations because it does not know one way or another whether Counsel provided the required disclosures. To put it bluntly, Counsels' communications with its clients are none of CoreLogic's business. That CoreLogic is "unaware" of the privileged communications between Counsel and Claimants is no basis to halt these arbitrations.

---

[10] Counsel called the Michigan State Bar for guidance and did not receive a return call.

## CONCLUSION

CoreLogic's twelve-page letter, through which it delayed these arbitrations for an additional two-and-a-half weeks (to date), fails to raise one legitimate "threshold issue" for the ARC's review. CoreLogic complains about Claimants' Consent forms, but the AAA has already rejected that challenge and referred it to individual arbitrators. CoreLogic argues that Counsel is engaged in the unauthorized practice of law even though Model Rule 5.5(c) expressly permits out-of-state counsel to represent clients in arbitration. CoreLogic takes issue with Counsel's Florida filings, but admits that Counsel have filed verified statements and have remained within the three-filing limit. CoreLogic misinterprets Michigan's requirements, and it provides no basis to challenge Counsel's privileged disclosures to its Virginia clients. Claimants respectfully request that the AAA promptly reject CoreLogic's challenges and immediately begin administering these cases.

Sincerely,

**NICHOLS KASTER, LLP**

Matthew C. Helland

CC:   Amy Williams (via email)
      Kimberly Jansen (via email)
      Tim Freudenberger (via email)
      Bryan Schwartz (via email)
      Rachel Terp (via email)