BRYAN SCHWARTZ LAW
Bryan Schwartz (SBN 209903)
Natasha Baker (SBN 319381)
180 Grand Avenue, Suite 1380
Oakland, CA  94612
Telephone: (510) 444-9300
Facsimile: (510) 444-9301
Email: bryan@bryanschwartzlaw.com
         natasha@bryanschwartzlaw.com

NICHOLS KASTER
Matthew C. Helland (SBN 250451)
Daniel S. Brome (SBN 278915)
235 Montgomery Street, Suite 810
San Francisco, CA 94104
Telephone: (415) 277-7234
Facsimile: (415) 277-7238
Email: helland@nka.com
         dbrome@nka.com

Attorneys for Plaintiffs and Putative
Class and Collective Action Members

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

HARRIETT MITCHELL, JASON SUMMERS and JOSEPH ADAMS, individually, on behalf of others similarly situated, and on behalf of the general public,

                              Plaintiffs,

    vs.

CORELOGIC VALUATION SOLUTIONS, INC., CORELOGIC PLATINUM VALUATIONS SOLUTIONS, LLC, and DOES 1-10, inclusive

                              Defendants.

Case No. 8:17-cv-02274-DOC-DFM

**NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS, FAIR LABOR STANDARDS ACT (FLSA) COLLECTIVE, AND PRIVATE ATTORNEYS GENERAL ACT (PAGA) REPRESENTATIVE ACTION SETTLEMENT**

Judge:   Hon. David O. Carter

Date:   August 31, 2020
Time:   8:30 a.m.
Place:  Courtroom 9D

## NOTICE OF MOTION AND MOTION

**TO THE COURT AND ALL INTERESTED PARTIES:**

**PLEASE TAKE NOTICE** that a hearing will be held on Plaintiffs' Motion for Final Approval of Class, FLSA Collective, and PAGA Representative Action Settlement on August 31, 2020 at 8:30 a.m. in the Courtroom of the Honorable David O. Carter, located at 411 W. Fourth St., Santa Ana, CA 92701. At the hearing, representative Plaintiffs Harriett Mitchell, Jason Summers, and Joseph Adams, through their attorneys and on behalf of all members of the Settlement Class, will and hereby do move the Court to: grant final approval to the Settlement Agreement between the Appraiser Plaintiffs and Defendants CoreLogic Valuation Solutions, Inc. and CoreLogic Platinum Valuations Solutions, LLC ("Defendant"); confirm the court's certification for settlement purposes only, the class of Appraisers described herein; and approve Plaintiffs' Counsel's request for fees, costs, and Named Plaintiff Enhancements.

The Motion is based upon the Notice of Motion and Unopposed Motion for Final Approval of Class Action Settlement and Memorandum of Points and Authorities in Support Thereof; the supporting Declaration of Daniel S. Brome, Esq. (Brome Decl.); all other exhibits and attachments submitted in support of the Motion; any oral argument of counsel; the complete files, records, and pleadings in the above-captioned matter; and such additional matters as the Court may consider. A Proposed Order is submitted herewith.

DATED: August 3, 2020             BRYAN SCHWARTZ LAW
                                  NICHOLAS KASTER

                                  By:   /s/ Daniel S. Brome
                                  Daniel S. Brome (SBN 278915)
                                  Attorneys for Plaintiffs

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................1

II.   SETTLEMENT ADMINISTRATION ...............................................2

   A. Preliminary approval and distribution of notice, and the favorable response of
the Class ............................................................................................2

   B. Allocation ...................................................................................3

   C. Injunctive Relief .......................................................................4

III. ARGUMENT ......................................................................................5

   A. The Court should grant final approval of the settlement...................5

   B. The proposed settlement is fundamentally, fair, adequate and reasonable. ......5

     1.   *The strength of Plaintiffs' case* ..................................................6

     2.   *The risk, expense, complexity, and duration of further litigation* ...............7

     3.   *The risk of maintaining class action status through trial*............................8

     4.   *The amount offered in settlement*................................................9

     5.   *The extent of discovery completed and the stage of proceedings*...............11

     6.   *The experienced views of counsel*................................................12

     7.   *Presence of a governmental participant*......................................12

     8.   *The views of Class Members*........................................................13

   C. The FLSA settlement is a reasonable compromise of a bona fide dispute. ....13

   D. The Court should approve the requested attorneys' fees and costs,
enhancement awards, and administration costs. ..................................14

   E. The court should approve the *cy pres* recipient................................15

   F. The Court should approve the PAGA settlement...........................16

IV. CONCLUSION ................................................................................17

1

2

## TABLE OF AUTHORITIES

3

**Cases**

4

*Aguilar v. Wawona Frozen Foods*, 2017 WL 2214936 (E.D. Cal. May 19, 2017) ...8

5

*Alexander v. FedEx Ground*, 2016 WL 1427358 (N.D. Cal. Apr. 12, 2016) ..........17

6

7

*Bautista v. Harvest Mgmt. Sub LLC*, 2014 WL 12579822 (C.D. Cal. July 14, 2014) .................................................................................................................................12

8

9

*Bey v. Mosaic Sales Sols. US Operating Co., LLC*, 2019 WL 7940584 (C.D. Cal. June 20, 2019) .................................................................................................10

10

*Boyd v. Bank of Am. Corp.*, 2014 WL 6473804 (C.D. Cal. Nov. 18, 2014) ...........16

11

*Campbell v. City of Los Angeles*, 903 F.3d 1090 (9th Cir. 2018) ........................6, 8

12

13

*Colman v. AIG Domestic Claims, Inc.*, 2009 WL 10673332 (C.D. Cal. Feb. 9, 2009) ...............................................................................................................................5, 13

14

*Covillo v. Specialtys Cafe*, 2014 WL 954516 (N.D. Cal. Mar. 6, 2014).................13

15

16

*Cruz v. Sky Chefs*, 2014 WL 7247065 (N.D. Cal. Dec. 19, 2014) ..........................17

17

*Cuzick v. Zodiac U.S. Seat Shells, LLC*, 2017 WL 4536255 (N.D. Cal. Oct. 11, 2017)...............................................................................................................................2

18

19

*Dennis v. Kellogg Co.*, 697 F.3d 858 (9th Cir. 2012) .............................................16

20

*Eddings v. Health Net, Inc.*, 2013 WL 3013867 (C.D. Cal. June 13, 2013) ...........16

21

*Flores v. Starwood Hotels & Resorts Worldwide, Inc.*, 253 F.Supp.3d 1074 (C.D. Cal. 2017) ......................................................................................................16

22

23

*Fronda v. Staffmark Holdings, Inc.*, 2018 WL 2463101 (N.D. Cal. June 1, 2018) ...2

24

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998).........................................6

25

*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011).................2

26

*In re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988 (9th Cir. 2010) .................................................................................................................................14

27

28

*In re Wells Fargo Loan Processor Overtime Pay Litig.*, 2011 WL 3352460 (N.D. Cal. Aug. 2, 2011) ............................................................................. 7

*Jones v. Agilysys, Inc.*, 2014 WL 2090034 (N.D. Cal. May 19, 2014) ................... 14

*Lee v. JPMorgan Chase & Co.*, 2015 WL 12711659 (C.D. Cal. Apr. 28, 2015) ...... 8

*Lusby v. GameStop Inc.*, 2015 WL 1501095 (N.D. Cal. Mar. 31, 2015) ................. 15

*Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982) ........ 5, 13

*Ma v. Covidien Holding*, 2014 WL 360196 (C.D. Cal. Jan. 31, 2014) .................... 10

*Mar v. Genuine Parts Co.*, 2017 WL 1495098 (E.D. Cal. Apr. 26, 2017) .............. 14

*McKenzie v. Fed. Exp. Corp.*, 2012 WL 2930201 (C.D. Cal. July 2, 2012) ............ 12

*Mitchinson v. Love's Travel Stops & Country Stores, Inc.*, 2017 WL 2289342 (E.D. Cal. May 25, 2017) ............................................................................. 5, 13

*Moore v. PetSmart, Inc.*, 2015 WL 5439000 (N.D. Cal. Aug. 4, 2015) *aff'd*, 728 F. App'x 671 (9th Cir. 2018) ............................................................................. 16

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ............................................................................. 11, 12

*Nelson v. Avon Prod., Inc.*, 2017 WL 733145 (N.D. Cal. Feb. 24, 2017) ........ 11, 13

*Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615 (9th Cir. 1982) ............. 6

*Pryor v. Aerotek Scientific, LLC*, 278 F.R.D. 516 (C.D. Cal. 2011) .......................... 6

*Richardson v. Interstate Hotels & Resorts, Inc.*, 2019 WL 803746 (N.D. Cal., Feb. 21, 2019) ............................................................................. 1

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) ................................. 10

*Stovall-Gusman v. W.W. Granger, Inc.*, 2015 WL 3776765 (N.D. Cal. June 17, 2015) ............................................................................. 10

*Thomas-Byass v. Michael Kors Stores (California), Inc.*, 2016 WL 11506717 (C.D. Cal. Sept. 19, 2016) ............................................................................. 7, 9

*Vazquez v. USM Inc.*, 2016 WL 612906 (N.D. Cal. Feb. 16, 2016) ....................... 17

*Viceral v. Mistras Grp. Inc.*, 2017 WL 661352 (N.D. Cal. Feb. 17, 2017) ............ 17

-ii-

*Wallace v. Countrywide Home Loans, Inc.*, 2015 WL 13284517 (C.D. Cal. Apr. 17, 2015) ................................................................................................................10

**Statutes**

Cal. Lab. Code § 2699(l) ........................................................................................16

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

The Court granted preliminary approval to this class and collective action settlement on May 7, 2020 (ECF No. 351). Since then, notice of the settlement has been distributed to all Class Members, and the response has been overwhelmingly positive: no objections were received in response, and the vast majority are participating in the settlement. The Court should grant final approval to close this matter and allow the 517 Settlement Class Members to receive payment.[1]

As explained in Plaintiffs' motion for preliminary settlement approval (ECF No. 339) and motion for attorneys' fees and costs (ECF No. 352), Court approval is warranted because this settlement provides substantial value to the Plaintiffs and class members and will bring years of complex, contentious litigation to a close. The favorable response from Settlement Class Members, with only a small handful seeking exclusion, strongly supports approval. The total settlement amount of $6,000,000 is significant and will result in meaningful payments to the 517 covered individuals. (Brome Decl. ¶ 2.) With this Court's approval, the members of the settlement group will receive a net average of $7,257 each. (*Id.*) The Court should view favorably that the Settlement ends contentious litigation without a lengthy trial and arbitrations, putting substantial cash in Class Members' hands based upon sometimes difficult off-the-clock claims, when they need it most.

The recovery here compares very favorably with other off-the-clock settlements in similar cases. *See, e.g.*, *Richardson v. Interstate Hotels & Resorts, Inc.*, 2019 WL 803746, at *3 (N.D. Cal., Feb. 21, 2019) (final approval granted for

---

[1] This number reflects the 524 individuals who were initially covered, plus one individual was added and will be paid from the contingency fund (*see* ECF No. 352, n. 1), minus the five Class Members who requested exclusion, minus the three Opt-ins who have not yet returned their releases. However, by agreement of the Parties, Plaintiffs' Counsel will continue attempting to collect the remaining FLSA releases, so the total could increase up to 520. (Brome Decl. ¶ 2.)

settlement involving average net payments of $2,138.99 for certified rest break and off-the-clock claims); *Fronda v. Staffmark Holdings, Inc.*, 2018 WL 2463101, *7-8 (N.D. Cal. June 1, 2018) (final approval for settlement providing average gross payment of $1,270 per class member for meal and rest break as well as off-the-clock claims); *Cuzick v. Zodiac U.S. Seat Shells, LLC*, 2017 WL 4536255, at *1-2 (N.D. Cal. Oct. 11, 2017) (preliminarily approving $952,000 gross settlement of off-the-clock, and meal and rest break claims, with a gross average recovery of approximately $800 per person). This cash recovery is particularly significant because it provides relief for individuals who remain part of this action as well as individuals who were compelled to arbitration, providing relief even to those individuals who had not yet filed their individual claims in arbitration. (Brome Decl. ¶ 2.) Beyond the monetary value, the injunctive relief achieved here, which amounts to a major reform of Defendant's compensation practices, strongly favors settlement approval. *See In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 944 (9th Cir. 2011) (recognizing that injunctive relief may have value to the class beyond what the defendant spends to implement it).

Plaintiffs request that the Court enter an order granting final approval so that payments can be distributed and this matter can be closed.

## II. SETTLEMENT ADMINISTRATION

The procedural history of this case and the related arbitration proceedings was set out in Plaintiffs' Motion for Preliminary Approval (ECF No. 339 at 9 – 11). Since the Court ruled on that motion, the settlement notice has been distributed, and Plaintiffs filed their motion for attorneys' fees and costs. (ECF No. 352.)

### A. Preliminary approval and distribution of notice, and the favorable response of the Class

The Court granted preliminary approval on May 7, 2020 (EFC No. 351). Notice was distributed by mail and email on June 4, 2020 to 524 eligible Opt-in Plaintiffs. (Brome Decl. ¶ 3; Alcantara Decl. ¶ 8.) For those notices that were

returned undeliverable, the administrator searched for new mailing addresses and re-mailed, with no Class Members' notices ultimately undeliverable.[2] (Alcantara Decl. ¶ 9.) The administrator received responses through physical mail, email, and through an online form for submission of FLSA releases. (Brome Decl. ¶ 3.)

The response from the FLSA Opt-ins has been overwhelmingly favorable. As of this filing, the administrator has received FLSA releases for 372 out of 375 FLSA Opt-ins (99%). (Alcantara Decl. ¶ 10.) By agreement of the Parties, Plaintiffs' Counsel will continue to seek the remaining three FLSA releases so that these individuals can be fully included in the settlement. (Brome Decl. ¶ 3.)

The response from the Rule 23 Class Members has likewise been extremely favorable. At the close of the notice period on July 24, 2020, the Administrator has not received any objections and only 5 requests for exclusion out of 247 Class Members (98% participation). (*Id.*) In sum, at least 98.5% of the Opt-ins and eligible class members are participating in the settlement.[3] (*Id.*)

**B. Allocation**

As explained in the Preliminary Approval Motion, the settlement amount will be allocated based on Class Counsel's damages analysis. (ECF No. 339 at 5–6.) The notice period has only resulted in three small changes to the allocation, each of which increases the average allocation to participating Class Members. First, as anticipated, the allocations of the few Class Members who chose not to participate in the settlement will be allocated *pro rata* to the participating Class Members. (Brome Decl. ¶ 4.) Second, the initial allocation assumed $150,000 in litigation costs (more than the amount ultimately requested) and a contingency fund of $100,000 to resolve any disputes. The final allocation will distribute the unused

---

[2] Some Opt-ins' notices were returned undeliverable, but Plaintiffs' Counsel was able to communicate with those Opt-ins and obtain executed release forms. (Brome Decl. ¶ 3; Alcantara Decl. ¶ 9.)

[3] The Settlement contained a blow-up provision that allowed Defendant to void the agreement if more than 10% of the class members opted-out.

costs and the unused portion of the contingency fund *pro rata* to the participating Class Members. (*Id.*) Third, for those individuals who disputed the dates of employment on which their initial allocations were based, those disputes have been resolved by the Parties and the administrator and the revised allocation will reflect longer dates of employment for these individuals. (*Id.*) As a result of these changes, participating individuals will be receiving an average of $186 more than the amount reflected in their settlement notices. (*Id.*)

As described in the motion for preliminary approval, the individual awards are considerable. After attorneys' fees and costs, 167 individuals will receive over $10,000 from the settlement, and 24 individuals will receive over $15,000. (Brome Decl. ¶ 5.) The allocation also includes a reasonable minimum of $1,800 *after* attorneys' fees and costs (or $900 for those individuals who were compelled to arbitration but did not yet file). (*Id.*)

The settlement agreement provides for a second check distribution if more than $10,000 of the initial class payments are uncashed. If less than $10,000 of the initial class payments are uncashed, or any of the second checks are uncashed, any checks that remain uncashed after 90 days will be voided and the amount will be allocated to Legal Aid at Work, a leading provider of free legal services to workers with wage claims in California. (*Id.*)

**C. Injunctive Relief**

The Settlement Agreement also provides for significant injunctive relief. Within six months of the order granting preliminary approval of this settlement, Defendant will: (1) remove the efficiency component from its Incentive Compensation Plan (which was Plaintiffs' initial impetus to file suit (and the chief concern for most members of the Settlement Class); (2) provide residential staff appraiser training regarding Defendant's meal period and rest break policies and the availability of premium payments; and (3) revise pay stubs as necessary with regard to incentive compensation and co-efficient overtime. (ECF No. 351.)

Defendant will provide documentation of these changes, along with a declaration of a corporate official regarding their implementation, which will be filed to supplement this motion in advance of the final settlement approval hearing. (*See Id.*)

## III.    ARGUMENT

### A. The Court should grant final approval of the settlement.

In granting preliminary settlement approval, this Court made a preliminary finding that the settlement agreement negotiated by the parties to be "fair, reasonable, and adequate" (ECF No. 351). In the second stage of Rule 23 settlement evaluation, "[h]aving already completed a preliminary examination of the agreement, the court reviews it again, mindful that the law favors the compromise and settlement of class action suits." *Mitchinson v. Love's Travel Stops & Country Stores, Inc.*, 2017 WL 2289342, at *3 (E.D. Cal. May 25, 2017). Likewise, the Court must scrutinize the FLSA settlement to determine if it is a fair and reasonable resolution of a bona fide dispute. *E.g.*, *Colman v. AIG Domestic Claims, Inc.*, 2009 WL 10673332, at *2 (C.D. Cal. Feb. 9, 2009) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354–55 (11th Cir. 1982)).

Here, the substantial value of the settlement to the class members as a result of months of arms'-length negotiations, including two full-day mediations facilitated by highly experienced class action mediators, indicates that the settlement is fair, adequate, and reasonable. Furthermore, the positive response from class members supports such a finding. Accordingly, this Court should approve the settlement so that class members may promptly receive their settlement payments.

### B. The proposed settlement is fundamentally, fair, adequate and reasonable.

The Ninth Circuit's standard of evaluation of the fairness, adequacy, and reasonableness of a settlement asks this Court to balance several factors:

the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). *See also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). As outlined below, these factors support final approval of the settlement.

### 1. The strength of Plaintiffs' case

Plaintiffs are confident in the strength of their claims and those of the class, and Plaintiffs and Class Counsel have zealously litigated this case to maximize their chances at a favorable result. The strong settlement achieved here is the direct result of this work, including: largely defeating motions to dismiss and for judgment on the pleadings; obtaining conditional FLSA certification, resulting in 377 affirmative opt-ins being filed during the notice period; winning a temporary restraining order and stipulated injunction against Defendant for improper contact with the Class to settle claims *ex parte*; defeating a motion to disqualify Class Counsel; obtaining sanctions against Defendant for compelling arbitration and then refusing to pay the associated fees when Class Counsel moved forward on more than 160 individual arbitrations; and receiving a tentative initial order certifying the California class, shortly prior to the mediation which led to this Settlement (ECF No. 352).

While Plaintiffs are confident in the claims, they also recognize the very real risks of proceeding. Plaintiffs allege that common practices led them to underreport their overtime hours, but class and collective treatment of off-the-clock cases is hardly guaranteed. *See, e.g., Campbell v. City of Los Angeles*, 903 F.3d 1090, 1102, 1120-1121 (9th Cir. 2018) (decertifying off-the-clock claims); *Pryor v. Aerotek Scientific, LLC*, 278 F.R.D. 516, 536 (C.D. Cal. 2011) (denying class certification of off-the-clock claims, finding individual analysis and testimony would be

-6-

1    required). Off-the-clock cases are inherently difficult, and here the Plaintiffs

2    worked remotely and frequently recorded overtime, presenting very real challenges

3    on the merits of Plaintiffs' claims. Beyond establishing liability, Plaintiffs face

4    challenges proving damages, establishing a willful violation, and obtaining

5    penalties and interest. *See, e.g., In re Wells Fargo Loan Processor Overtime Pay

6    Litig.*, 2011 WL 3352460, at *6 (N.D. Cal. Aug. 2, 2011) (risks related to

7    calculating off-the-clock damages supported settlement approval).

8         Plaintiffs face additional expense and uncertainty pursuing these claims in

9    arbitration. If litigation continued without this settlement, many individuals would

10   likely recover nothing. Even if Plaintiffs established liability at trial and in 75% of

11   the arbitrations that have been filed, that would leave 220 individuals with *no*

12   recovery (following a loss in arbitration or by declining to proceed in arbitration).

13   (Brome Decl. ¶ 6.) And even if Plaintiffs prevailed at trial, post-judgment appeals

14   would likely follow, delaying or reducing any recovery. While Plaintiffs maintain

15   the strength of their claims, the considerable risks of proceeding on these claims

16   strongly supports settlement approval. *E.g.*, *Thomas-Byass v. Michael Kors Stores

17   (California), Inc.*, 2016 WL 11506717, at *9 (C.D. Cal. Sept. 19, 2016) (finding

18   support for settlement where "Defendant contended Class Members could not

19   recover for off-the-clock activity. . .").

20        Finally, the strengths of Plaintiffs' case should be considered in light of the

21   current economic environment, in which unemployment and economic uncertainty

22   are both extremely high. This settlement provides certain, prompt and substantial

23   money to the Plaintiffs. Compared to what Plaintiffs stood to gain from continued

24   litigation, the settlement is highly valuable.

25        **2.   The risk, expense, complexity, and duration of further

26        litigation**

27        Employment class actions are "by their nature, time-consuming and

28   expensive to litigate." *Aguilar v. Wawona Frozen Foods*, 2017 WL 2214936, at *3

-7-

(E.D. Cal. May 19, 2017). This case has been particularly so, as the parties have litigated extensively prior to reaching settlement. The parties have participated in two full-day mediations and litigated numerous contested motions (including Defendants' motions to dismiss, to compel arbitration, and to disqualify Plaintiffs' Counsel, and Plaintiffs' motions for conditional and class certification, for a temporary restraining order, and to sanction Defendants) – in addition to engaging in approximately 160 nationwide individual arbitrations in parallel. There is every reason to believe that further proceedings would have been similarly contentious and complicated. Without this settlement, the Parties would face additional discovery, decertification, and summary judgment motions. Because many of the contested issues are fact-intensive, the case could not be resolved on summary judgment, requiring resolution at trial. Accordingly, there is no quick and easy route to payment for Plaintiffs absent this settlement, and so this factor favors approval. *E.g., Lee v. JPMorgan Chase & Co*., 2015 WL 12711659, at *5 (C.D. Cal. Apr. 28, 2015) (granting final approval and recognizing that certain recovery through settlement offered clear advantage of continued expense and time of further litigation).

### 3.  <u>The risk of maintaining class action status through trial</u>

While Plaintiffs are confident in their claims, certification of off-the-clock cases is challenging. Even if the Court initially granted class and collective certification, Defendants would certainly move for decertification before trial, and an appeal would likely follow. *See, e.g., Campbell*, 903 F.3d at 1102, 1120-21 (decertifying off-the-clock claims). Further, even if Plaintiffs established class-wide liability for their off-the-clock work, proving damages on a class basis in such a case presents challenges. The damages phase would likely have required substantial expert costs and appraisers may have struggled to prove the extent of off-the-clock work – especially in light of each Class Member's routine certifications of the accuracy of their time submitted for compensation. The Settlement Agreement

-8-

1   avoids great uncertainties, without requiring each claimant to prove the nature and

2   extent of his or her off-the-clock work.

3         The risk in this case is compounded because it is not just one case. This

4   matter is a combination of a court case and a multitude of individual arbitrations

5   across the country, with approximately 160 individuals who have already filed

6   arbitration demands, and other individuals who were subject to the Court's order

7   compelling arbitration but who had not (yet) filed individual demands. For all of

8   these Class Members, the value provided through this settlement compares very

9   favorably to the potential benefits and obvious risks of individual arbitration. The

10   risks for each Class Member in arbitration were exacerbated by Defendants'

11   decision to file counterclaims against them, claiming they had falsified their records

12   or breached agreements with CoreLogic. Those who had not yet filed arbitration

13   claims possessed eroding claims, because of the ticking statutes of limitations since

14   the Court ordered arbitration. In sum, the many risks under this prong favor

15   approval.

16   **4.  The amount offered in settlement**

17         The Settlement amount of $6,000,000 will provide Plaintiffs with significant

18   up-front cash payments. The Settlement also provides long-term benefits for all

19   current and future appraisers as a result of the injunctive relief included in the

20   settlement: CoreLogic is removing the efficiency metric, increasing awareness of

21   the availability of premiums for missed meal and rest breaks, and revising paystubs

22   that reflect incentive compensation and co-efficient overtime. The Settlement also

23   releases all Plaintiffs from the counterclaims brought by Defendants.

24         For the appraisers participating in the suit, the average individual payment

25   will be over $11,500/gross, $7,200/net. (Brome Decl. ¶ 5.) These payments are

26   substantial and strongly favor approval. *See*, *e.g.*, *Thomas-Byass*, 2016 WL

27   11506717, at *7 (granting final approval in off-the-clock case with average

28   settlement share of $466.40); *Bey v. Mosaic Sales Sols. US Operating Co., LLC*,

-9-

2019 WL 7940584, at *10 (C.D. Cal. June 20, 2019) (granting preliminary approval in off-the-clock case with average net recovery of $428.64 per person). In addition, the settlement allocation is fair and reasonable, because it is based on individual earnings and work history, meaning it gives the greatest payment to workers with the largest potential claims. To the extent possible, Class Counsel calculated damages for all class members based on Defendant's payroll data, using individualized work history records and a uniform assumption of five hours of off-the-clock work per week and three missed meal periods per week.

The total amount of recovery also strongly supports approval. Here, the total settlement value represents 26% of the total value of all of Plaintiffs' claims, and 44% of the potential unpaid wages, a favorable outcome supporting approval. (Brome Decl. ¶ 7.) *See Bey*, 2019 WL 7940584, at *10 (comparing settlement value against the realistic value, as opposed to theoretical maximum recovery "given that the bulk of the monetary relief was attributed to penalties and interest, and the fact that a large number of the class members executed arbitration agreements."); *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 964–66 (9th Cir. 2009) (courts may consider value without all theoretically available penalties). Indeed, Courts regularly approve wage and hour settlements worth considerably less, as a percentage of the maximum exposure, than the amount here. *See Stovall-Gusman v. W.W. Granger, Inc.*, 2015 WL 3776765, at *4 (N.D. Cal. June 17, 2015) (approving settlement worth 7.3% of what Plaintiffs estimated could be awarded at trial); *Wallace v. Countrywide Home Loans, Inc.*, 2015 WL 13284517, at *6 (C.D. Cal. Apr. 17, 2015) (granting final approval and finding the settlement value— $1,509,596.98 after the claims submission process—offered "a substantial benefit to the Class" even though that amount was approximately 24% of the amount initially set aside for payments to the class, and only 5.5% of "the maximum potential recovery"); *Ma v. Covidien Holding*, 2014 WL 360196, at *5 (C.D. Cal.

Jan. 31, 2014) (settlement providing "9.1% of the total value of the action [was] 'within the range of reasonableness.'"). This factor strongly favors approval.

### 5. <u>The extent of discovery completed and the stage of proceedings</u>

The Parties have engaged in extensive discovery. (Brome Decl. ¶ 8.) There have been sixteen depositions, including all named Plaintiffs and the deposition of FRCP 30(b)(6) witnesses and other managers for the Defendant. (*Id.*) The Parties have exchanged over 77,000 pages of relevant discovery. (*Id.*) The Parties have fully briefed numerous contested motions. (*See* ECF No. 339 at 17–18.). In addition, the Parties began the arbitration process for many of the individuals compelled to arbitrate, filing arbitration demands for approximately 160 individuals. (*Id.*) Defendants also provided substantial data regarding class members' work and pay history, which was used to calculate damages for all Opt-ins and Class Members. (*Id.*) The Parties participated in two full-day mediations, additional negotiations, and dozens of back-and-forth exchanges, bilaterally and with the mediator's help. (*Id.*) The negotiations that led to this Settlement had the benefit of the advanced stage of the proceedings, ample discovery and evidence on which to weigh the strengths and weaknesses of the case, and with data necessary to calculate damages. Many class settlements are approved with far less discovery conducted. *See, e.g., Nelson v. Avon Prod., Inc.*, 2017 WL 733145, at *4 (N.D. Cal. Feb. 24, 2017) (approving settlement without formal discovery where class counsel reviewed relevant data, such as payroll records — even for a portion of the class).

The amount of discovery parties have thus far conducted, along with the extensive litigation history and negotiations, supports a finding that the settlement is fair and reasonable and warrants approval. *See, e.g., Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair.").

### 6.  <u>The experienced views of counsel</u>

As explained in the motions for preliminary approval and for attorneys' fees and costs, Class Counsel have considerable experience representing plaintiffs in class and collective wage and hour cases. Class Counsel enthusiastically endorse the Settlement. Class Counsel is confident that this settlement is fair, reasonable, and provides excellent value to Plaintiffs. The settlement provides clear advantages over continued litigation, including prompt and certain payment, and injunctive relief that almost certainly could not have been achieved through the Court case. This settlement agreement is the result of arms-length negotiations between experienced counsel representing the interests of Plaintiffs and Defendants, facilitated by a skilled mediator, after thorough factual and legal investigation, and reflects detailed damages calculations. This factor favors final approval. *Bautista v. Harvest Mgmt. Sub LLC*, 2014 WL 12579822, at *9 (C.D. Cal. July 14, 2014) (citing *Nat'l Rural Telecommunications Coop.*, 221 F.R.D. at 528) ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation. This is because the parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in the litigation.").

### 7.  <u>Presence of a governmental participant</u>

A portion of the settlement has been allocated as PAGA penalties, of which 75% will be paid to California's Labor and Workforce Development Agency (LWDA). As a result, the LWDA is considered "a government entity affected by this action*." McKenzie v. Fed. Exp. Corp.*, 2012 WL 2930201, at *6 (C.D. Cal. July 2, 2012). Since Plaintiffs have complied with the PAGA notice requirements when filing and settling this case and the LWDA has not objected, "this factor weighs in favor of granting final approval." *Id.*

1

### 8.  <u>The views of Class Members</u>

2
3
4
5
6

The reaction of the class strongly supports approval. Notice was sent out to 524 Class Members on June 4, 2020. As of July 24, 2020, all but three of the 374 FLSA Opt-ins have executed their releases, affirmatively deciding to accept this settlement, none of the Class Members objected to the settlement, and only five Class Members requested exclusion. (Brome Decl. ¶ 3.)

7
8
9
10
11
12
13
14
15
16

Plaintiffs' Counsel took steps to ensure that all class members received notice by performing skip traces and contacting class members by mail, email, phone calls, and text messages. (Brome Decl. ¶ 9.) Taking these steps ensures the best practicable notice was provided and supports granting approval. *Mitchinson*, 2017 WL 2289342, at *6. The 98+% rate of overall participation here and the lack of objection to the agreement weigh heavily in favor of final approval. *Covillo v. Specialtys Cafe*, 2014 WL 954516, at *6 (N.D. Cal. Mar. 6, 2014) (38% participation with no objections and no opt-outs "strongly favors approval"); *Nelson*, 2017 WL 733145, at *5; *Colman*, 2009 WL 10673332, at *4–5 (79% claim rate with no opt-outs or objections supported approval).

17
18

In sum, all factors favor approval of the class settlement here, and this Court should grant final approval.

19
20

### C. The FLSA settlement is a reasonable compromise of a bona fide dispute.

21
22
23
24
25
26
27
28

Settlement of FLSA claims for wages are subject to court approval. *Lynn's Food Stores, Inc.*, 679 F.2d at 1353. Court approval is favored "to promote the policy of encouraging settlement of litigation," where the settlement reflects a "reasonable compromise over issues" that are "actually in dispute." *Id.* at 1354. The same facts described above that support approval of the class settlement also demonstrate that the FLSA settlement is a reasonable compromise over numerous issues that both Plaintiffs and Defendants acknowledge to be hotly disputed, making approval highly warranted. *Colman*, 2009 WL 10673332, at *2 (factors

-13-

considered under "the two inquiries [for FLSA and class action approval] are essentially the same").

As described above and in Plaintiffs' preliminary approval motion (ECF No. 339), there are numerous issues in dispute here. These include, but are not limited to, the propriety of collective treatment, liability for alleged off-the-clock work, whether any violations were willful, the availability of liquidated damages, and the amount of Plaintiffs' damages.

The settlement reflects a "reasonable compromise" on these issues, with a total value worth 44% of the total claimed wage loss or 26% of the claimed damages and penalties. *See Jones v. Agilysys, Inc.*, 2014 WL 2090034, at *2 (N.D. Cal. May 19, 2014) (settlement that "constitutes between 30% to 60% of recoverable damages" supports approval). Additionally, almost all of the FLSA Opt-ins are participating in the settlement, which favors approval. *See Mar v. Genuine Parts Co.*, 2017 WL 1495098, at *2 (E.D. Cal. Apr. 26, 2017) (94% of class members "affirmatively opted in to the settlement," which showed class members' approval.).

Accordingly, the settlement satisfies the *Lynn's Food* standard, and the Court should approve the settlement of Plaintiffs' FLSA claims.

### D. The Court should approve the requested attorneys' fees and costs, enhancement awards, and administration costs.

Plaintiffs filed a separate motion for attorneys' fees and costs before the end of the notice period. (ECF No. 352) *See In re Mercury Interactive Corp. Securities Litigation*, 618 F.3d 988 (9th Cir. 2010) (requiring fee motion during notice period). Class Counsel seeks attorneys' fees of $2,000,000, or one-third of the common fund, pursuant to the Parties' Settlement Agreement. In addition to the factors set out in that motion (the results obtained, the quality of counsel and the work performed, the complexity of the issues, the risk of nonpayment in contingent litigation, and a lodestar cross-check), Plaintiffs note that the Class Members'

-14-

responses to the notice of settlement support granting the requested fees. Specifically, the class notices stated the requested amount of fees as both a percentage and total value, and no one objected, and, indeed, 99+% of opt-ins affirmatively chose to accept the settlement. (*See* ECF No. 340-3.) The high rate of participation demonstrates Plaintiffs' support of the settlement, including the requested fees.

Similarly, both the preliminary approval motion and the fee motion addressed the reasonableness of awarding enhancement awards to the three Named Plaintiffs. (ECF No. 339, ECF No. 352). In addition to the reasons set out previously (the Named Plaintiffs have been actively involved in this litigation, have taken on reputational and professional risk on behalf of the class, have agreed to general releases of claims, and the requested awards are modest compared to the total settlement amount and average class member payment), the reaction of the class supports granting approval, since the notices to Class Members explained the requested enhancement awards and no class members objected to the settlement. (*See* ECF No. 340-3.) If approved, these awards would amount to 1% of the gross settlement amount. In other words, the awards "will not significantly reduce the amount of settlement funds available to the rest of the class." *Lusby v. GameStop Inc.*, 2015 WL 1501095, at *5 (N.D. Cal. Mar. 31, 2015) (approving a total of $30,000 in enhancement awards out of a $750,000 settlement, or 4% of the total).

The universally positive reaction of the Class supports approval of the requested attorneys' fees and costs and Named Plaintiff service awards.

### E. The court should approve the *cy pres* recipient.

In the event that settlement checks remain uncashed after 90 days, the Settlement Agreement calls for those funds to be donated to Legal Aid at Work (formerly known as the Legal Aid Society – Employment Law Center) as a *cy pres* beneficiary if the total is less than $10,000 (if more than $10,000 are uncashed, there will be a second check distribution; any amounts uncashed from those checks

-15-

would be donated to *cy pres*). (ECF No. 339.) Legal Aid at Work is a non-profit organization that is the leading provider of direct legal services in employment law for low-wage workers in California. A nonprofit organization that "works to ensure that all workers benefit from the laws that regulate pay and work hours" is an appropriate *cy pres* recipient in an employment case. *Eddings v. Health Net, Inc.*, 2013 WL 3013867, at *4 (C.D. Cal. June 13, 2013) (approving Legal Aid at Work as *cy pres* beneficiary). The work performed by Legal Aid at Work "bears a substantial nexus to the interests of the class members" in this wage and hour case. *Moore v. PetSmart, Inc.*, 2015 WL 5439000, at *8 (N.D. Cal. Aug. 4, 2015) *aff'd*, 728 F. App'x 671 (9th Cir. 2018) (same). Accordingly, Legal Aid at Work satisfies the Ninth Circuit's standard that a *cy pres* recipient be guided by objectives underlying the statutes at issue and the interests of silent class members. *See Dennis v. Kellogg Co.*, 697 F.3d 858, 865 (9th Cir. 2012).

### F. The Court should approve the PAGA settlement.

Court approval is required for a PAGA settlement. Cal. Lab. Code § 2699(l). District courts often look to whether the settlement terms are fundamentally fair, adequate, and reasonable in light of PAGA's policies and purposes. *Flores v. Starwood Hotels & Resorts Worldwide, Inc.*, 253 F.Supp.3d 1074, 1077 (C.D. Cal. 2017). Here, PAGA penalties were calculated as part of Class Counsel's global damage calculation and discounted to reflect the risk of loss and the discretionary nature of these penalties; the weighting was informed by confidential discussions during the mediation. Out of the $60,000 PAGA allocation, representing 1% of the Settlement Fund and 0.75% of the estimated value of the PAGA claims, $15,000 will be distributed to the aggrieved employees, and $45,000 will be distributed to the LWDA. This amount is reasonable compared to other cases approving class action settlements with PAGA claims. *See, e.g.*, *Boyd v. Bank of Am. Corp.*, 2014 WL 6473804, at *8 (C.D. Cal. Nov. 18, 2014) (approving PAGA penalties worth 0.32% of gross settlement); *Viceral v. Mistras Grp. Inc.*, 2017 WL 661352, at **1,

-16-

3 (N.D. Cal. Feb. 17, 2017) (approving PAGA penalties worth 0.33% of gross settlement and worth 0.15% of total estimated value of PAGA claims); *Alexander v. FedEx Ground*, 2016 WL 1427358, at *2 (N.D. Cal. Apr. 12, 2016) (0.7% PAGA allocation); *Vazquez v. USM Inc.*, 2016 WL 612906, at *1 (N.D. Cal. Feb. 16, 2016) (0.67%); *Cruz v. Sky Chefs*, 2014 WL 7247065, at *3 (N.D. Cal. Dec. 19, 2014) (0.57%).

## IV.   CONCLUSION

The Court previously found, on a preliminary basis, that the settlement is fair, reasonable, and adequate (ECF No. 351). Since that decision, the class members have received notice of the settlement; none objected and almost all have elected affirmatively to participate in the settlement. The Court should grant final approval of the settlement in all respects and enter the Proposed Order and Judgment.


DATED: August 3, 2020            BRYAN SCHWARTZ LAW
                                 NICHOLAS KASTER

                                 By:   /s/ Daniel S. Brome
                                 Daniel S. Brome (SBN 278915)
                                 Attorneys for Plaintiffs